JOHN S. McCAMPBELL, SPECIAL GUARDIAN, v. JOHN HEN-
DERSON.

1. ABATEMENT OF SUIT BY DEATH OF DEFENDANT.—Death of defend-
ant does not, in an action of debt, *ipso facto* abate the suit. When
the legal representatives are made parties, the action proceeds as an
action pending from the original institution of the suit.

2. SUIT AGAINST HEIRS.—Where there neither is nor can be administra-
tration, as from lapse of time or otherwise, and heirs are in posses-
sion of property of their ancestor, such heirs are his personal repre-
sentatives, and an action may be revived against them, or a new
suit can be brought against them.

3. REVIVAL OF SUIT AGAINST HEIRS.—See facts held sufficient to
authorize a revival of a suit for debt against heirs of the original
defendant.

4. ABATEMENT—DILIGENCE IN MAKING PARTIES.—See facts held
insufficient to warrant this court in reversing for error in the court
below, in not dismissing the suit for want of diligence in making
parties after the death of the original defendant.

5. ERASURES AND INTERLINEATIONS.—Where a document has been duly recorded, its execution proved on the trial, and its execution not put in issue by the pleadings, the existence of erasures and interlineations are not reasons requiring the exclusion of such instrument when offered in evidence.

6. EVIDENCE OF PARTY TO SUIT—WITNESS.—In an action against heirs made party and defending by special guardian, the testimony of plaintiff should not be admitted touching any transaction with, or statement by, the original defendant.

ERROR from San Patricio. Tried below before the Hon. H. Clay Pleasants.

This suit was brought October 12, 1864, by Henderson against Josephus Love, the father of the wards of plaintiff in error, to recover damages for a breach of contract made between them on the 12th of October, 1863, under which defendant in error was to have one-third of the increase of the stock of horses belonging to Love for taking care of the same until the 1st day of March, 1866; which contract, he alleged, was broken in the autumn of 1864, by Love taking possession of the stock forcibly and driving it out of the country. It was also brought to recover the value of about seventy head of horses, owned by the defendant in error, separate from his share of the increase of the Love stock. These, he also alleged, were taken possession of, and driven away by Love without his consent. Love died testate in 1867, leaving his wife, Margaret Love, sole executrix of his will. In October, 1869, she made herself a party to the suit. From the death of Love until his executrix became a party to the suit, the cause was continued for parties. Margaret Love died prior to 1871, after which there was citation published to bring in as parties the unknown heirs of Josephus Love. This citation was made without petition, alleging that Josephus Love left children, or that property descended to them. McCampbell was appointed special guardian of the minor heirs of Josephus Love, and in 1874 the cause was tried and a judgment rendered in favor of the defendant in error, from which an appeal was prosecuted to this court,

and the cause was reversed, for the reason that the heirs of Love had not been made parties by petition, and because it did not appear that property had descended from Love to his heirs.

After the reversal the heirs of Love were made parties by petition, which alleged that property had descended to them from Josephus Love to the value of $10,000. Citation to the heirs of Love was served by publication, the citation containing the substance of the petition and of application to make the heirs parties. McCampbell was again appointed and qualified as special guardian. The venue of the cause having been improperly changed to Nueces county, upon the reversal of the cause it was returned to San Patricio county, where, at the September Term, 1877, it was tried.

On the trial the contract set out in the petition for keeping Love's stock of horses for one-third the increase, and of date 13th of October, 1863, was offered. Objections were made to its introduction because of many interlineations on its face. It had been proven up for record and recorded, and was also proven by a subscribing witness. Its existence was not put in issue by the pleadings. The objections were overruled and the contract admitted. It provided for Henderson keeping the stock on shares for two additional years and for one-third the increase. It was proved that Henderson took care of the stock, numbering three hundred head, during 1863 and part of 1864, giving good attention to it, branding two-thirds for Love and one-third for himself; that Henderson owned other horses, and that in the fall of 1864 Love took and drove off all the stock, taking Henderson's also, of which there were seventy or eighty head, worth $15 per head.

Over objections, Henderson, plaintiff, testified "that he owned seventy or eighty head of stock horses besides his share of the 'Love stock,' consisting of mares and young stock, at the time the stock was driven off by Love; that all of them were driven off by Love without his consent, and

that he had never recovered the same; that he also owned one mule of the value of $50, and three or four saddle horses which he had bought of Love before the contract, worth each $25, also driven off by Love, and never returned."

There was evidence of land and personal property belonging to the estate of Love of the value of $7,600.

On part of defendant there was testimony tending to show a rescission of the contract by Love and Henderson soon after it was made, and that by the aid of the United States military, in 1867, Henderson had captured fifty to seventy-five head of the Love stock.

Judgment was rendered for plaintiff for $2,230 against the heirs of Josephus Love. The special guardian was directed by the decree to sell property of his wards, which they had inherited from Josephus Love, to satisfy the same.

The special guardian prosecutes writ of error, assigning as error—

1. Error in overruling exceptions of defendant to the service of citation by publication upon the heirs of Josephus Love, upon the return of which the heirs were made parties and a special guardian appointed to represent them.    *    *    *

2. In disallowing the plea of limitation interposed in the suit, claiming benefit of the interval from the death of Love until the heirs were made parties.

3. Admitting the contract without explanation of erasures and interlineations apparent on its face.

4. Allowing plaintiff to testify in this case, it being a suit against the estate of Love, though nominally against the heirs.

5. Error in rendering judgment for plaintiff and in refusing motion for new trial.

*Patrick O'Docharty* and *McCampbell & Givens,* for plaintiffs in error.

I. *Scire facias,* as used in our statutes in this connection, seems to only fill the place of a citation or summons to be

issued by the clerk against the legal representatives, not the heirs. (Boone, Adm'r, v. Roberts, 1 Tex., 147.) Heirs are not legal representatives. (Alexander v. Barfield, 6 Tex., 400; Montgomery v. Nash, 23 Tex., 157; Bufford v. Holliman, 10 Tex., 560.)

II. Did the District Court of San Patricio county acquire any jurisdiction over the minor heirs of Josephus Love, deceased, by reason of anything set forth or alleged in the supplemental petition, if even the service in this cause should be held to be good?

The only ground set forth upon which the heirs are sought to be made parties is, that their ancestor died possessed of certain lands in San Patricio county and in Nueces county; that these lands descended to his heirs; that during the lifetime of the ancestor this suit was instituted against him to recover unliquidated damages for a breach of contract and for a tortious conversion of personal property. None of the property converted is alleged to have passed into the hands or possession of the heirs; no lien is claimed upon the realty. The action or suit against Josephus Love was such as could be enforced only against the legal representatives of his estate, and it became the duty of the defendant in error, if he desired to prosecute the suit, to have forced an administration. If no one would administer, he could have applied for letters of administration himself. The law affords an ample remedy, and until the ordinary means of redress are exhausted a party has no right to have recourse to the extraordinary remedy of a suit against the heirs. If the heirs are liable in this suit, they must be held liable as executors *de son tort*, which is against the opinion expressed by this court in the cases of Ansley v. Baker, 14 Tex., 607, and Green v. Rugely, 23 Tex., 543. In these cases it was held that our statutes vest ample jurisdiction in the County Court over estates of deceased persons, forming a complete system and providing for every contingency.

The attention of the court is respectfully called to the

decisions of the courts of Massachusetts under a probate system, in regard to liabilities of heirs to creditors, very similar to our own system. In the case of Russ v. Alpaugh, reported in 19 Am. Rep., 468, it is held, that "the lands as well as the personal property of a deceased person are liable for his debts, and the remedy of the creditors must ordinarily be sought by action against his executor or administrator, * * * and the heirs are not liable to a personal action upon his covenants, even if they have received assets, unless administration has been taken out and a breach occurs after the estate has been settled." (Royce v. Burrell, 12 Mass., 396; Hall v. Bumstead, 20 Pick., 2.)

When this case was first before the Supreme Court, as reported in 42 Texas, 520, the court says "the heirs were not made parties by petition."

We submit, that in order for the District Court to acquire jurisdiction of the minors, and compel them to plead to an action against them for a debt of their ancestor, something more must be alleged in the petition that they are called upon to answer, than is contained in the petition in question—miscalled supplemental.

It is and must stand as an original petition, or suit, so far as the heirs of Josephus and Margaret Love are sought to be affected. It is the first time they have been called to answer for their ancestor's debts, and it does seem that the petition fails to set forth a sufficient cause of action.

III. The refusal by the court to entertain the plaintiff's pleas of the statutes of limitation and prescription. Upon this point, it is submitted that these statutes do apply with much force in this case. When we take into consideration the length of time from the death of Josephus Love and of his executrix, Margaret Love, up to the time that the present citation to his minor heirs was prayed for by the supplemental petition, (which is the first act of diligence in the prosecution of the cause which can be considered for any purpose,) it is clear that the fact of the suit remaining upon the docket of

the court cannot be considered such a vigilant prosecution of the case as will arrest the statute; and especially is this the case when the suit is against minors, whose interests the court is *ex officio* bound to protect. The suit was, by the death of Josephus Love, in a manner and to a certain extent abated. It could have been reinstated against his legal representatives; but until this was done there was no suit pending up to the time his executrix made herself a party defendant. After the death of Margaret Love, the executrix, the suit was again abated; and from the time of the death of the executrix up to the filing of the supplemental petition nothing was done to prosecute the cause. For although the defendant in error caused a citation to issue to the minor heirs at a former term, the citation was not issued or served according to law, and cannot be taken into consideration as arresting the statute in any manner. The defendant in error may have been mistaken in his remedy as to the manner of making the heirs of a deceased person parties to a suit; yet he cannot take advantage of his own mistake, and claim such erroneous proceeding and such unauthorized citation as an act of diligence which will arrest the statute of limitations.

February, 1871, the original suit filed in 1864 abated, subject, however, to be revived under the statute against the legal representatives, which has not been done, or even an excuse offered for not so doing.

The cause of action, if it survived against the heirs, survived at the death of Margaret Love, executrix, prior to 1871, when the property vested in the heirs, and they were then liable to an action as much so as when this petition was filed, 9th of July, 1875, more than four years after the cause of action arose against them. By the death of Margaret, the last ancestor of these minors, the creditor was forever precluded from a personal suit, and his recourse was against the property, which was all that was left to them, all that could be subjected to the discharge of their liabilities, and the creditor had his election to proceed in the Probate Court

or directly against the heirs, showing, if he could, good reasons for not proceeding in the Probate Court.

In the case of Teal v. Ayres, 9 Tex., 588, the learned chief justice held that the vigilant creditor can, with facility, force administration; and if he do not, and his claim be barred, there is no reason why he should not be precluded. The same opinion holds that at the death of Margaret Love the statutes of limitation commenced running in favor of the heirs.

The right to bring suit, after the lapse of four years from the death of a person, against his heirs, is given in the laws of 1870 and 1873; but it is clear that the suit here contemplated is an original suit for a debt not barred. It is further suggested, that under this law no mode is provided to cite non-resident or unknown heirs, leaving the creditor to the law of 1866. (Paschal's Dig., art. 5460.)

The case of Patterson v. Allen, supra, 23, is referred to in support of the views set forth in this brief, as well as the case of The State v. Lewellyn, 25 Tex., 797.

If the pendency of a suit against the ancestor of non-resident heirs suspends limitation, how long?

IV. The admission of the contract in evidence in this cause without any explanation as to its appearance and condition was error. The court will bear in mind that this contract was executed by a deceased party; that the suit was being prosecuted against his minor heirs, who were absent, and were represented by a stranger to the entire transaction, who was their guardian ad litem. Now, under such circumstances, was it not the duty of the court to have required the defendant in error to explain and account for, in some manner, the erasures and interlineations in the paper offered?

V. The court erred in allowing the defendant in error to testify in this cause for any purpose. This objection, it is insisted, is well taken. This is a suit in reality against the estate of a deceased person, although, for the purpose of avoiding the necessary consequence of his own laches, the

defendant in error proceeds against the heirs. The transaction is one which occurred between him and the deceased. He was not called upon to testify by the opposite party, nor required to testify thereto by the court, and he should not have been allowed to testify. (Paschal's Dig., art. 6827.) His testimony was regarded as material, and is the only evidence in the case which contradicts the testimony of the witnesses Timon and Carson as to the rescission of the contract for a breach of which this suit is brought. It must have been upon this evidence of the defendant in error that the court gave judgment for him for any amount; for if the evidence of the witness Carson is to be believed, (and his credibility was not and cannot be questioned,) the contract was, by mutual consent, rescinded and annulled, and the defendant in error had no cause of action upon the contract. Carson had been a subscribing witness to the contract, and could not be deceived as to the matter of which he testified.

Timon was a disinterested witness. The parties to the contract were all present at the house of the witness when the conversation occurred which is detailed in his evidence, and he fully corroborates the testimony of Carson.

Paschal's Digest, art. 6827, provides: "In actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called upon to testify thereto by the opposite party, or required to testify thereto by the court." "This law was intended to protect the parties beneficially interested." (Lewis v. Aylott, 45 Tex., 190.)

*Lackey & Stayton*, for defendant in error.

I. When a party defendant in a suit died pending the suit, leaving property subject to his debts which descended to his heirs, and the executrix was made party and died, and no administration was taken out upon the estate of the

original defendant by those to whom the estate descended within four years from his death, then the heirs of such de- fendant may be made parties defendant to such suit by peti- tion and citation by publication. (42 Tex., 520; Patterson v. Allen, 50 Tex., 23; Gen. Laws, 1873, p. 110; Paschal's Dig., art. 5460; The State v. Lewellyn, 25 Tex., 797.)

II. At the time the heirs of Josephus Love were made parties to this suit, the defendant in error had a lien upon the land directed by the judgment to be sold, which was a claim relative to said property. (Gen. Laws, 1873, p. 110.)

III. The suit did not abate upon the death of Josephus Love, nor upon the death of Margaret Love, his legal repre- sentative; and the pendency of the suit since its first institu- tion prevented the running of the statute of limitations. (Pas- chal's Dig., art. 698.)

IV. In the absence of a plea, under oath, casting suspicion upon the agreement between Henderson and Love, the court did not err in admitting the same in evidence without any explanation of interlineations.

V. In a suit against a minor who is sued for a debt of his ancestor, and is defended by a special guardian, the plaintiff may testify as to any matter which occurred between him and the ancestor without violating the provisions of law con- tained in Paschal's Digest, arts. 6826, 6827; but the testi- mony given by the plaintiff in this case was not in relation to any transaction with or statement by Josephus Love.

Moore, Chief Justice. — The death of a defendant in an action of debt, unquestionably, does not *ipso facto* abate the suit. It merely suspends it until the legal representative of the deceased defendant makes himself, or is made, a party.

When this is done the action proceeds, not as a new suit dating from its revival against the personal representative, but as an action pending from the date of its original insti- tution against his intestate.

An heir can only be held liable for the debts of his ances-

tor to the extent of the estate which has descended to or
vested in him.   Ordinarily, the creditor must, in the first
instance, bring suit for the collection of his claim against
the personal representative of the deceased debtor, and not
against his heir.   Where suit is brought against the debtor,
and he dies, such suit cannot be revived against the heir,
unless the plaintiff if suit had not been brought, might bring
an original action against him.   But if there is no adminis-
tration upon the estate of the defendant, and the facts show
that none is necessary or desired by those interested in his
estate, and especially if, owing to the lapse of time, the stat-
ute forbids the grant of administration upon his estate, and
the heirs are in possession of his property, they are in such
sense the representatives of their ancestor, that a pending
action may be revived or an original suit brought against
them.

On the death of the original defendant, Josephus Love, a
*scire facias* was ordered to issue to his legal representative
when known; and at a subsequent term Mrs. Margaret Love,
his surviving wife, as the record recites, and sole execu-
trix of his will and universal legatee thereunder, as appellant
alleges in an answer subsequently filed, appeared and made
herself a party.   On her death the action was attempted to
be again revived against the unknown heirs of Love by
publication of a writ of *scire facias* and the appointment of a
guardian *ad litem*.   The case as thus revived coming on for
trial, judgment was rendered in favor of the plaintiff.   This
judgment, however, on appeal by the guardian, was held by
this court to be erroneous, because the heirs, against whom
no petition had been filed, were not properly before the
court.   (42 Tex., 520.)   On the return of the case to the
District Court the plaintiff filed a supplemental petition,
alleging, among other things, "that at the decease of said
Josephus Love he left heirs of his body to whom the above
described tracts of land descended, and which said tracts of

land are now held, owned, and possessed by said heirs. Said tracts of land are reasonably worth ten thousand dollars."

The record shows that more than four years had elapsed from the death of Love. It is not pretended that any representative of his estate had been appointed subsequent to the death of his wife. In view of these facts the averments of appellee seem amply sufficient to warrant a revival of the suit against the heirs. (Gen. Laws, 13th Leg., p. 110; Paschal's Dig., art. 5460; Patterson *v.* Allen, *supra*, 23; The State *v.* Lewellyn, 25 Tex., 797.)

Whether the heirs of Love had in fact inherited the land, as alleged by appellee, or whether his entire estate had been devised to his wife, as averred in appellant's answer, was of no moment on the question of the revival of the suit; and on the trial it seems to have been satisfactorily shown that the heirs had inherited lands from their ancestor, as alleged by appellee.

Where the death of the defendant is suggested, and proper diligence is not used by the plaintiff to revive the action, which unquestionably must be determined in view of the peculiar facts and circumstances of each case, the court may no doubt dismiss it for want of prosecution. But while there may have been a want of proper diligence in reviving this case against the heirs, we are not prepared to say that the court erred in not dismissing the case, or holding that it had abated for want of parties of its own motion, or even if an objection of this character had been interposed by appellee; and it is obvious, from what has been previously said, the plea of the statute of limitation presented no valid defense, as the suit when revived must be regarded as pending from the date of its original institution.

In view of the facts presented in the record, the court did not, in our opinion, err in admitting in evidence the written agreement between appellee Henderson and Love, the original defendant. This instrument has been sent up with the record for our inspection. It is certainly not free from inter-

lineations and erasures; but the reading of it and its general appearance lead to the inference that these interlineations and erasures were probably made contemporaneously with the agreement. Its execution was properly proved, and it was duly recorded within a reasonable time after its date. One of the subscribing witnesses was before the court as a witness on the trial of the case, but no effort was made to impeach its genuineness. The parol testimony for both parties relating to the terms of the contract, or in any way bearing upon them, corresponds substantially with its stipulations. It was fully set out in the original petition; yet Love, in his answer, neither denied its execution nor alleged that it had been altered, but, on the contrary, virtually admitted its genuineness. He based his defense to the action on entirely different grounds.

The evidence shows that the heirs of Love are minors. They are represented by a guardian. The action is for recovery on a demand against their ancestor. The suit is maintainable against them in view of the fact that they stand in his place and are to be regarded as his representatives. The court, therefore, properly ruled that appellee, not having been called by the opposite party or required to do so by the court, could not be allowed to testify as to any transaction with or statement by the original defendant, Josephus Love, deceased. But, notwithstanding its ruling, the court appears, from the statement of facts, to have permitted appellee to testify, over appellant's objection, "to the number of broodmares he had received from Love; as to the time the stock was taken from him by Love; that they were driven off by Love without his consent; and that no such conversation as that related by witnesses Timon and Carson, in relation to the rescission of the contract, between Love and the plaintiff, ever occurred at any time after the contract sued upon was made." The evidence of appellee touching these matters was, as we think, clearly inadmissible, (Paschal's Dig., art. 6827,) and should have been excluded. And for the error

of the court in not sustaining appellant's objection to it, the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.