Tucker Royall v. Margaret Sue Holloway et al.

No. 4615.   Decided November 30, 1927.
(299 S. W., 862.)

*W. C. Campbell* and *R. C. Sewell,* for appellant.

The contestants of the will—appellees here—having introduced witnesses who testified to statements, conversations, transactions and dealing had between and in the presence of the testatrix and Tucker Royall, the executor named in the will, and between and in the presence of testatrix and W. E. Barrett, one of the beneficiaries named in the will, both being parties to the litigation, the court committed reversible error in excluding, on objection of appellees, the testimony of said Tucker Royall and W. E. Barrett offered by appellant to contradict or explain the purported particular statements,

transactions and conversations with and in the presence of the testatrix, as testified to by contestants' said witnesses. Jones Blue Book on Evidence, Vol. 4, Secs. 781–782; Jones on Evidence, 2nd Edition, Sec. 783; Marshall v. Campbell, 212 S. W., 723; Galvin v. Knights of Father Mathew (Mo.), 165 S. W., 45; Parker v. Miller, 258 S. W., 602; Willis v. Pierce, 260 S. W., 1087; Runnels v. Belden, 51 Texas, 48; Hurley v. Lockett, 72 Texas, 268.

*A. M. Barton* and *Charles L. Black,* for appellees.

The various questions certified present for decision, in substance, the same proposition of law. All of them involve an effort on the part of the proponent to prove by witnesses, interested and incompetent under the statutory test, a denial of the fact that certain "transactions" and certain conversations had been had with the deceased. The evidence was properly excluded. McCampbell v. Henderson, 50 Texas, 601; Parks v. Caudle, 58 Texas, 221; Bartlingck v. Harriman, 41 S. W., 844; Johnson v. Lockhart, 40 S. W., 640; Hazelwood v. Pennybacker, 50 S. W., 199; Abbott v. Stiff, 81 S. W., 562; Edelstein v. Brown, 100 Texas, 403. Such is the settled law of this Court. Holland v. Nimitz, 111 Texas, 419–433, and authorities there cited. See, also: Swinebroad v. Knight, 76 S. W., 365; Volbracht v. White, 197 Ill., 298; Cold Mfg. Co. v. May Co., 169 N. W., 797; In re Callister's Est., 153 N. Y., 294; Lyon v. Ricker, 141 N. Y., 226; Partridge v. Meeker's Est., 135 N. W., 248. The law does not frown upon any and all efforts to prove transactions with decedents; it only prescribes a mode of proof, and limits all parties to that mode, and this whether they have the affirmative or the negative of the issue. Therefore, it is manifest that one does not waive the benefits and protection of the statute who admittedly confines himself to the statutory mode of proof.

Mr. Presiding Judge POWELL delivered the opinion of the Commission of Appeals, Section B.

This cause is before the Supreme Court upon the following certificate from the Honorable Court of Civil Appeals of the First District:

"This cause, pending here upon appeal, involved a contest of the will of Mrs. T. C. Calloway upon two grounds, one of them being the exertion upon her in the making thereof of undue influence by W. E. Barrett, her nephew and chief beneficiary.

"The evidence raised the issue of such influence, and the jury found that the execution of the will was procured through its exertion.

"During the trial the contestants of the will, appellees here, introduced the following testimony:

"1. Through their witness, Obediah Calloway, after he had testified concerning a meeting at his house between the testatrix, the heirs of her deceased husband, John R. Calloway, W. E. Barrett and others, to consider a settlement of the John R. Calloway Estate, to this effect:

"(a) 'Billie (W. E.) Barrett took Mrs. Calloway into a room and stayed there about 35 minutes, I suppose. Then they came back out there and said to the crowd, "We are not ready for no kind of business." "What did Mrs. Calloway say?" "She said nothing." '

"Thereupon the proponents offered W. E. Barrett as a witness; if he had been permitted by the court to testify, 'He would have denied that he took Mrs. Calloway into the room and stayed there about 35 minutes, but, on the other hand, would have testified that he stayed in the room with her only four or five minutes, and that such occasion was the first time he had seen his aunt, Mrs. Calloway, deceased, since the death of her husband. He would have further testified, if permitted, that he did or said nothing that would have caused her to become nervous or distressed.'

"(b) 'Witness Obediah Calloway, testifying for contestants on direct examination, testified that Mrs. T. C. Calloway had told him after her husband's death that she wanted him, Obediah Calloway, to be the director for her and look after her affairs, but that Billie Barrett had told her, Mrs. Calloway, that if she did turn the property over to witness Obediah Calloway to look after, there would be lots of lawsuits with the Calloway heirs.

" 'After said testimony had been given by the said Obediah Calloway, proponent placed W. E. Barrett upon the witness stand, who would have testified, if he had been permitted to do so by the court, as follows:

" 'He would have denied that he had made such statement to Mrs. T. C. Calloway, or any statement of like nature.'

"2. Through Mrs. Ludie Calloway:

"(a) 'Witness Mrs. Ludie Calloway, testifying in behalf of the contestants, in referring to the meeting of the Calloway heirs at

her house with Mrs. T. C. Calloway for the purpose of discussing settlement of the John R. Calloway estate, testified as follows:

" 'She (referring to Mrs. T. C. Calloway) made a statement to me and said: "I don't see why we can't have that here. Everybody says we can but Billie (Billie Barrett), and Billie says we have to go to town, and I don't want to go to town," and says, "Ludie, what is the matter—don't you think that we could have it here?" She says, "Billie isn't willing to it," says, "We will have to go to town, and furthermore Billie says that they would sue me always if Obediah was to be my director," and says, "If I would be your director they will sue me, and let them sue me." I says, "I will call him back," and she said, "No, I don't want to do that, because Billie wouldn't like it." '

"After said testimony had been given by the said Mrs. Ludie Calloway, proponent placed W. E. Barrett on the witness stand, who would have testified, if he had been permitted to do so by the court, to the following:

" 'He would have denied that any such conversation took place between himself and Mrs. T. C. Calloway, as testified to by Mrs. Ludie Calloway.'

"(b) 'Witness Mrs. Ludie Calloway, testifying for contestants, having testified that Mrs. T. C. Calloway told her that she wanted to carry out John R. Calloway's plans; that Billie Barrett told her, Mrs. T. C. Calloway, "I don't see why you should worry over that —you just turn it over to me. If you don't do that and Obediah takes it and settles with the Calloway heirs, they will sue you as long as you live, and you don't want to be worried with that." He says, "Turn it over to me and they can sue me." '

" 'After said testimony had been given by the said Mrs. Ludie Calloway, proponent placed W. E. Barrett upon the witness stand, who would have testified, if he had been permitted to do so by the court, and would have denied that he at any time had ever had any such conversation with Mrs. T. C. Calloway.'

"3. Through Mrs. Maggie Barrett:

"(a) 'Witness, Mrs. Maggie Barrett, testifying in behalf of contestants, stated and testified that when he (meaning W. E. Barrett) came out there to her house and undertook to talk business affairs to Mrs. T. C. Calloway, that she, Mrs. Calloway, would say to him, "Don't talk figures to me, I can't do it. I will just have to trust it to you."

" 'After said testimony had been given by the said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, who would have testified, if he had been permitted to do so by the court, and denied that said Mrs. T. C. Calloway had ever made any such statement as testified to by Mrs. Maggie Barrett.'

"(b) 'Witness Mrs. Maggie Barrett, testifying in behalf of contestants, having testified that in a conversation between her, Mrs. T. C. Calloway, and W. E. Barrett, that the said Mrs. T. C. Calloway made the statement to the effect that her deceased husband's business was almost running her crazy.'

" 'After said testimony had been given by the said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, who would have testified, if he had been permitted to do so by the court, and denied that any such statement as testified to by the witness Mrs. Maggie Barrett had ever been made in his presence by Mrs. T. C. Calloway.'

"(c) 'Witness Mrs. Maggie Barrett, testifying for contestants on direct examination, having testified that Mrs. T. C. Calloway, deceased, had stated to W. E. Barrett and Johnny Calloway, in her presence, that she wanted Ben Greenwood and Albert Greenwood, as they were her lawyers, and that W. E. Barrett told her, Mrs. T. C. Calloway, that she had just as well get that out of her mind.

" 'After said testimony had been given by the said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, and he would have testified and denied, if he had been permitted to do so by the court, that neither her nor J. H. Calloway made any such statement to the said Mrs. T. C. Calloway.'

"(d) 'Witness Mrs. Maggie Barrett, while testifying on direct examination in behalf of contestants, testified as follows:

" 'That she (meaning Mrs. T. C. Calloway) wanted John Henry Barrett, my son, to have a thousand dollars to go on his education, because he had to hold up the grand old Barrett name, was the words she said. She said she had promised Don that when he was born.

" 'In this connection, witness further testified that W. E. Barrett had told her that Mrs. T. C. Calloway, deceased, had made such statement also to him.

" 'After said testimony had been given by the said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, who would have denied, if he had been permitted to do so by the

court, that Mrs. T. C. Calloway, deceased, had ever made such statement at any time to him.'

"(e) 'Witness Mrs. Maggie Barrett, witness for contestants, testified on direct examination, as follows:

" 'That when she and her children went out to Mrs. T. C. Calloway's house and W. E. Barrett was there, he usually entertained them by telling them about Orange and oil wells, and things like that; that Mrs. T. C. Calloway never would talk much in W. E. Barrett's presence. That witness didn't have much ability to see Mrs. Calloway when W. E. Barrett was there, because W. E. Barrett "didn't want us to talk with her on her business"; that he would always come and do the talking. That "he would come in and sit down and talk to us and entertain us."

" 'After said testimony had been given by the said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, who would have testified, if he had been permitted to do so by the court, that Mrs. T. C. Calloway, on such occasions, would engage in conversation in the usual manner, and do a great deal of talking, and fully join in the conversation, and said witness would have denied, if he had been permitted to do so by the court, that he exerted any influence whatsoever over Mrs. T. C. Calloway in an effort to keep witness and her children from coming in contact with or freely talking with Mrs. Calloway at any and all times.'

"(f) 'Witness Mrs. Maggie Barrett, testifying on direct examination in behalf of contestants, in referring to the execution by Mrs. T. C. Calloway of a bill of sale executed by her conveying to John H. Calloway certain cattle, which bill of sale was dated April 8, 1919, witnessed by Tucker Royall and the witness Mrs. Maggie Barrett, she, the witness, testified that she had nothing to do with said bill of sale, and that Mrs. T. C. Calloway didn't have anything to do with it either.

" 'After said testimony had been given by the said Mrs. Maggie Barrett, Tucker Royall was placed upon the witness stand by his attorneys, who would have testified, if he had been permitted to do so by the court, that he had read said bill of sale over to Mrs. Calloway at the time she signed it, and that she fully understood its terms and provisions, and that said sale was her voluntary act and deed, and made at her instance and request and not at his instance and request.'

"(g) 'Witness Mrs. Maggie Barrett, testifying on direct examination for contestants, stated and testified that Mrs. T. C. Callo-

way had insisted and begged W. E. Barrett to permit her to see the so-called codicil to the will of her husband, John R. Calloway; that said W. E. Barrett then told the said Mrs. T. C. Calloway that it was not worth the paper it was written on, and that Mr. Royall tore it up and that Mrs. T. C. Calloway said to W. E. Barrett that if the paper was worth deeding land by, it was worth keeping and she wanted it.

" 'After said testimony had been given by said Mrs. Maggie Barrett, proponent placed W. E. Barrett upon the witness stand, who would have denied, if he had been permitted to do so by the court, that any such conversation ever took place between himself and Mrs. T. C. Calloway.'

"The trial court excluded all of this answering testimony proffered by the proponent through his witnesses W. E. (Billie) Barrett and Tucker Royall, on the ground that it contravened R. S., Article 3690. Undoubtedly, we think, the admission of that to which it was offered as a reply influenced the finding of the jury that undue influence was exerted.

"Because of doubts upon the matter among the members of this court, we beg to certify the following question:

"Did the court below err in excluding any of the testimony W. E. Barrett would have given, as the same is hereinbefore specified and set out in paragraphs 1, subdivisions (a) and (b), 2, subdivisions (a) and (b), and 3, subdivisions (a), (b), (c), (d), (e), and (g), or that Tucker Royall would have given, as is likewise specified and set out in paragraph 3, subdivision (f)?"

Chief Justice Pleasants affixed his official signature to aforesaid certificate but stated that it had been prepared by Associate Justice Graves.

This evidence was excluded by the trial court on the theory that its admission would have violated Article 3716 of the Revised Civil Statutes of 1925, reading as follows:

"In actions by or against executors, administrators or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator, intestate or ward, unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

The several bits of proffered evidence mentioned in the certificate present for decision the same proposition of law. In each instance there was an effort on the part of the proponent of the will to prove by witnesses, interested and incompetent under the statutory test, a denial of the fact that certain "transactions" and certain conversations had been had with the deceased. Counsel for the appellant concede that, ordinarily, under the general rule and construction of this statute, the witnesses Barrett and Royall "would be precluded from testifying, unless called as a witness by the opposing party." It is also admitted that they were not called to testify by appellees. It further appears· that deposition or former testimony of the deceased, herself, was offered upon the trial. But, the gist of the contention of appellant is that he should have been permitted to use these interested witnesses in his own behalf in order to rebut and negative the evidence of certain *disinterested* and *competent* witnesses placed on the stand by the appellees. In other words, that the contestants, by using disinterested and admittedly competent witnesses under ·the statute to prove the allegations of their contest of this will, waived the protection of this statute and gave the appellant the right to contradict such admittedly competent evidence by the introduction of interested and incompetent witnesses. No such proposition can be sustained and the trial court correctly excluded the evidence of these witnesses.

Counsel for appellant cite Jones on Evidence, Vol. 4, Secs. 781–783. In Section 783, the one applicable to the situation at hand, the author discusses waiver by calling other witnesses to the conversation. His first proposition is as follows:

"The rule is that if the representative testifies or calls other witnesses *interested in the estate* to testify as to the transactions or communications of the deceased, he thereby waives his right to object to the testimony of the adverse party."

The author then reviews the cases applying that rule. After doing so, he affirms the correctness of the following proposition:

"The general rule is that *if the representative calls witnesses who are not interested in the estate to testify as to transactions* or communications of the deceased or incompetent with the adverse party, the testimony so given does *not* constitute a waiver of the right to object to the testimony of the adverse party." (Italics by Mr. Jones.)

The author then cites and reviews numerous authorities in support of the last proposition quoted.

Each of the aforesaid propositions is correct, but the latter alone is applicable here. This latter proposition by Mr. Jones has been consistently followed by our Supreme Court since the early case of McCampbell v. Henderson, 50 Tex., 613. As so frequently stated by our Supreme Court, the central thought in this statute is that death has closed the lips of one of the interested parties and the law will equalize matters by closing the lips of the others. The purpose of the statute was to place all interested parties on the same plane, which is manifestly fair. This idea of equality runs through the rules laid down by all the courts. *Interested* witnesses on one side may be met by *interested* witnesses on the other. For the same reason, *disinterested* and *competent* witnesses on one side can be met only by *disinterested* and *competent* witnesses on the other side. Parties availing themselves of competent and disinterested evidence certainly should not be penalized by being held to have waived the protection of this statute which closes the mouths of interested parties. If such a penalty be inflicted, then the statute may as well be repealed. In this connection, we quote as follows from one of the briefs for appellees:

"The mere raising of the issue does not waive the protection of the statute, for, if that were true, then the statute could never apply, for manifestly there can be no occasion to apply it until some one has raised the issue—that is, until some one has first alleged and has undertaken to offer proof 'as to' a transaction with a decedent. Unless there be first an issue raised 'as to a transaction with' the deceased person, then no testimony, either affirming or disproving such transaction, can be either relevant or material. The tendering of the issue through pleading and proof does not waive the protection of the statute. On the contrary it furnishes the essential basis for the application of the statute in any case. It is a novel proposition to affirm that one who undertakes to prove a transaction with a decedent waives the protection of the statute as against the efforts of his opponents to disprove the transaction. This proposition strips the statute of all force, for, if no issue ever be raised 'as to a transaction,' then no testimony can ever become relevant as bearing upon that issue."

It is clear to us that this statute does not "frown upon any and all efforts to prove transactions with decedents; it only prescribes a mode of proof and limits all parties to that mode, and this whether they have the affirmative or the negative of the issue. Therefore, it is manifest that one does not waive the benefits and protection of

the statute who admittedly confines himself to the statutory mode of proof." Our view is admirably stated by the Supreme Court of Minnesota in the case of Cold Manufacturing & Elevator Company v. May Company, 169 N. W., 797, as follows:

"The question here is whether the plaintiff waived the provisions of this statute by the introduction of the testimony of a witness who is competent under the statute to testify as to such conversation. This statute operates to suppress evidence and it should be strictly construed. But it must be fairly construed. We cannot justify the construction of the statute urged by the defendant. The testimony of a witness not interested in the event of the action is available to either party who may call him to testify as to such a conversation and we see no tenable ground for holding that a party waives the statute by introducing such competent testimony. The production of such competent testimony does not give the other party the right to introduce testimony which the statute declares incompetent."

To the same effect are the following decisions in other jurisdictions: Swinebroad v. Bright, 76 S. W. R. (Ky.), 365; Volbracht v. White, 197 Ill., 298; Payne v. Long, 131 Ala., 438; Brice v. Hamilton, 12 S. C., 32; Hall v. Halloman, 136 N. C., 34; Wells v. Ayres, 5 S. E. (Va.), 21; McKenna v. Bolger, 117 N. Y., 651; Hard v. Ashley, 136 N. Y., 645; In re Callister's Estate, 153 N. Y., 294; Lyon v. Ricker, 141 N. Y., 226; Partridge v. Meekers' Estate, 135 N. W. (Mich.), 248. It is seen that there is practical unanimity upon this point in other jurisdictions and all the decisions are in line with our own Supreme Court. As we view it, where a difference in judicial interpretation is found, a careful investigation will discover a corresponding difference in statutory provisions. In this connection, it is worthy of note that our statute is more comprehensive and the rule of exclusion afforded by it is broader than that found in the statutes of some other states. This is made rather clear by the opinion of our Supreme Court in the case of Edelstein v. Brown, 100 Texas, 403. In view of this broad scope and purpose of our statute, it is quite clear to us that its operation does not depend upon the exigencies of the case from the standpoint of the party who offers the excluded testimony. It may be important from the standpoint to deny the transaction or conversation, but it is just as important from the standpoint of the party who has the affirmative of the issue to prove such transaction or conversation. The statute does not prevent parties from disproving the transaction which has been brought into evidence. It merely confines each of the parties to a given mode of proof.

As we have already indicated, the rule laid down by Mr. Jones has been consistently followed by our own Supreme Court. The most recent case is that of Holland v. Nimitz, 111 Texas, 419, opinion by Justice Greenwood. In that case, as shown by the opinion in effect "and as more fully appears from the original statement of facts, the contestants of a will were permitted to introduce various conversations, acts, etc., tending to show the exertion of undue influence by one Holland, in respect to his mother's will. He thereupon was permitted to testify that he did not at any time say anything to his mother with reference to making a will and did nothing to induce her to make a will, and the Court held that this testimony involved a plain violation of the statute."

In the course of its opinion, the court said:

"The statute forbade the admission of testimony, positive or negative, of this witness in this action, at his own instance, against the contestants, 'as to any transaction' with Mrs. Susan E. Holland. Testimony of like import was held inadmissible in McCampbell v. Henderson, 50 Texas, 613; Johnson v. Lockhart, 40 S. W., 641; and Edelstein v. Brown, 95 S. W., 1128. See also Webb v. Simons, 3 Ga. App., 639, 60 S. E., 334."

Not only is this case of Holland v. Nimitz directly and clearly in point, but it expressly carries with it an approval of the cases cited. The first case cited by Justice Greenwood is that of McCampbell v. Henderson, 50 Texas, 601. The applicability of that case to the situation in the case at bar is correctly stated by counsel for appellees as follows:

"In that case the plaintiff, Henderson, sought damages for breach of a contract alleged to have been made with the deceased, Love, under whom the Defendants claimed. The Defendants offered the testimony of disinterested witnesses, Timon and Carson, to prove an alleged rescission of the contract for breach of which the suit was brought, and the Court, over objection, admitted the testimony of the plaintiff, among other things, to the effect that 'no such conversation as that related by witnesses Timon and Carson, in relation to the rescission of the contract between Love and the plaintiff ever occurred at any time after the contract sued upon was made.' (Page 613.) The Supreme Court, in an opinion by Chief Justice Moore held that the testimony was not admissible because violative of the statute. The brief statement of the case and the way in which the question arose is supplemented by the statement in the brief of counsel as set out by the reporter. (Pages 608–609.) The case is directly in point and cannot be successfully distinguished from the

instant case. In that case, as in this, the witnesses for the defendants, on the issue of rescission, were disinterested and, therefore, competent witnesses. They detailed a conversation purporting to show a rescission. To rebut their testimony, plaintiff was permitted to deny that any such conversation took place, and the testimony was held to be inadmissible, on the ground that the plaintiff was an interested and, therefore, an incompetent witness on that particular issue."

The decisions by our Supreme Court just referred to are not in conflict with any others by that court. Counsel for appellant refer to the cases of Runnels v. Belden, Executor, 51 Texas, 48, and O'Neill v. Brown, 61 Texas, 34. The rules laid down in those cases are correct, but not applicable here. In the Belden case, the court said:

"In such case, if the executor insists on putting the deposition of his testator in evidence, it does not violate, but accords with, the reason and spirit of the law, and its proper construction, to permit the other party to the suit to also give his version of the matters between himself and the deceased referred to in such deposition; and this seems to be the interpretation given elsewhere to similar statutes. (Mumm v. Owens, 2 Dill., (U. S. Cir. Ct.,) 475; Monroe v. Napier, 52 Ga. 385.)"

In other words, the depositions of the original plaintiff, himself, were in evidence. Of course, the "other party," also interested, should be allowed to give his version of the matters referred to in such deposition.

In the O'Neill case, the *testimony* of the deceased, himself, upon a former trial was available. We have no such testimony of the deceased, herself, in the case at bar. These two decisions are exactly in line with our views of the rule as announced by Mr. Jones. They are not at all in conflict with the several decisions approved by Justice Greenwood in the very recent case of Holland v. Nimitz, supra. In this later case, the court cited with approval Johnson v. Lockhart, 40 S. W. R. (T. C. A.), 640. In this last case, the court said:

"Our own statutes seem to be to a great extent, at least, copied from that adopted by the State of New York; and in that state, in a suit by an administrator, the defendant could not testify that a conversation between himself and the deceased, to which a witness for the plaintiff had testified, never occurred. Vide Pinney v. Orth, 88 N. Y., 447. See, also, decision to like effect by the Supreme Court of Michigan, Pillard v. Dunn, 66 N. W., 45. In the case of

McCampbell v. Henderson, 50 Texas, 601, our own Supreme Court construed our statute in accordance with the above-recited decisions."

Since our statute is so similar to that of New York, it is interesting to see what the Court of Appeals of that State thinks of the proposition, advanced by counsel for appellant in the instant case, that proof by disinterested witnesses of *declarations* of a deceased is the same as introducing *her testimony*. In the case of Lyon v. Ricker, 141 N. Y., 226, the court said:

"Although declarations against interest are admitted the same as if the declarant were present and testified in person, yet proof of such declarations by competent third parties is not, within the meaning of this section, the testimony of the deceased person, and it does not open the door for the admission of what would otherwise be plainly incompetent testimony under this section. The cases cited by the defendant do not so hold, so far as this Court has decided them."

That same great court, all judges concurring, held the same way in the case of In Re Callister's Estate, 153 N. Y., 306. In New York, the bars were let down where the *testimony* of the deceased person is given in evidence concerning the same transaction or communication. In the Callister case, the court held that a promissory note given by John Callister, the deceased, to his wife, was *evidence,* but it was not the *testimony* of a deceased person. The court, in this case, would not let down the bars. It said:

"It would be a loose and dangerous construction to hold that when an instrument executed by a dead man is read in evidence by those who represent him, the living party to the document can testify to whatever was said and done when it was executed. As was said by the General Term: 'If this ruling is sustained, then in all cases the evidence created by a writing between the living and the dead may be overthrown by the evidence of the living as to the transaction out of which the writing was created, while the lips of the other party are closed, thus defeating the wise purpose of section 829.' We find no well-considered case that so holds."

In this very connection, the New York court very interestingly says:

"There is a distinction between testimony and evidence, for the former means statements made under the sanction of an oath, while the latter, which includes the former, but is more comprehensive, means whatever is received to establish or disprove an alleged fact. Testimony is personal, for it is the utterance under oath of a person,

while evidence may be either documentary or oral. When a carefully drawn statute relating to evidence, aiming to preserve equality and to prevent unfair advantage, speaks of 'the testimony of * * * the deceased person' as 'given in.evidence,' we think it means by testimony the sworn statements of the deceased made on some prior occasion. (Lyon v. Ricker, 141 N. Y., 225, 231.) This construction is in accord both with the object of the statute and the language used in it."

The Belden and O'Neill cases, supra, by our own Supreme Court go nearly as far as the Court of Appeals of New York, letting down the bars when depositions or former sworn testimony of the deceased is put in evidence. Our Supreme Court has gone no further. And, such an exception merely equalizes the situation and permits one *interested* witness to contradict another of the same kind.

Appellant's main reliance seems to be upon the decision of the Court of Civil Appeals at Fort Worth in the case of Marshall v. Campbell, 212 S. W., 723. It may be conceded that this decision is contrary to our views. This Campbell case never reached the Supreme Court in any way. And, in a later case, this same Court of Civil Appeals, with exactly the same personnel, in a unanimous opinion, held exactly to the contrary of its opinion in the Campbell case. In the meantime, it is true that Justice Greenwood had written his opinion in the case of Holland v. Nimitz, supra. This later case by the Fort Worth court is that of Hunt v. Garrett, 275 S. W., 96. In that case, the losing party made an effort to introduce testimony of the same character as presented in the case at bar. But, he failed in all the courts, trial and appellate. Upon this point, the Court of Civil Appeals, speaking through Chief Justice Connor, said:

"This statute, in substance and effect, is to be found in our federal enactments and in many of the states of the Union, and a very full discussion of the subject of the competency of witnesses as to transactions with deceased persons in view of such statutes may be found in Jones' Blue Book on Evidence, vol. 4, beginning on page 621 with section 772. In that article (section 780) it is said that the statute may be waived, as indeed is indicated by our own statute, if the representative of the deceased calls upon the adverse party to testify. In this case, however, appellant was not called on to testify by the plaintiff, and we recall no testimony drawn out in behalf of appellee on the cross-examination of appellant that would amount to a waiver. Further treating the subject of waiver, the author on evidence referred to, in section 783, declares that the statute may also be

waived if the representative testifies or causes other witnesses interested in the estate to testify, as to transactions or communications of the deceased. But as to other witnesses not interested in the estate, the author thus states the general rule—

" 'that, if the representative calls witnesses who are not interested in the estate to testify as to transactions or communications of the deceased or incompetent with the adverse party, the testimony so given does not constitute a waiver of the right to objection to the testimony of the adverse party.'

"The rule as so stated is well supported by the authorities. Hence we think that the fact that the plaintiff in this case called on Drs. Braswell and Roberts to testify as to what occurred in the office of the sanitarium did not operate as a waiver of the plaintiff's right to object to the testimony of appellant W. W. Hunt, last above referred to."

In this Hunt case, W. W. Hunt wanted to testify that his brother, the deceased, while undressing for his operation, gave him a key to his box of valuables and told him he wanted him (W. W. Hunt) to have what was in that box. The case is exactly in point and if the court had thought its prior opinion in Marshall v. Campbell was still the law, such testimony would certainly have been admitted.

In the Hunt case, the trial court had given a peremptory instruction against this claim of W. W. Hunt as to ownership of the contents of this box. The Court of Civil Appeals reversed this branch of the case for another trial, feeling that, although W. W. Hunt was not authorized to testify as he desired to, there was other evidence which was competent and which raised this issue.

A writ of error was granted in the Hunt case by the Supreme Court. It was referred to Section A of the Commission of Appeals and, upon the recommendation of the latter, the judgment of the District Court was affirmed by the Supreme Court. See 283 S. W., 489. Of course, if either the Court of Civil Appeals or the Supreme Court had felt that the testimony of W. W. Hunt was admissible, there would have been testimony to support his theory and the peremptory instruction against him would have been improper. So, it is clear that in this very recent case, decided finally less than one year ago, this very contention by appellant in the case at bar was overruled by the Fort Worth Court of Civil Appeals and our Supreme Court.

We have shown that the trial court in the case at bar, in excluding the testimony of Barrett and Royall, followed the decisions of our

16

Supreme Court and the great weight of authority in all other jurisdictions where similar statutes are in force. Therefore, that court did not err in refusing to admit such testimony.

We recommend that the question certified, in its entirety, be answered in the negative.

The opinion of the Commission of Appeals answering certified questions is adopted, and ordered certified to the Court of Civil Appeals.

*C. M. Cureton,* Chief Justice.

Associate Justice Greenwood not sitting.