**Richard L. SHEPHERD, M.D., and Allan Graham, M.D., Appellants,**

**v.**

**Lahoma LEDFORD, Individually and as Heir to the Estate of John Ledford, Deceased, Appellee.**

**No. 2–95–195–CV.**

Court of Appeals of Texas, Fort Worth.

July 11, 1996.

Rehearing Overruled Aug. 22, 1996.

---

Wallach & Moore, P.C., Jennifer M. Andrews, Joseph M. Gallagher, Fort Worth, for appellants.

Morgan & Weisbrod, Margaret Henning, William A. Newman, Bruce A. Pauley, Dallas, for appellee.

Before LIVINGSTON, RICHARDS and HOLMAN, JJ.

## OPINION

HOLMAN, Justice.

Physicians Richard L. Shepherd and Allan Graham appeal an adverse jury verdict and trial court rulings made during a wrongful death action based on medical malpractice. We sustain appellants' complaint that a biased juror was not struck for cause, sustain appellee's two cross-points, and we reverse and remand.

While recuperating from surgery that replaced his aortic valve, John Ledford died. His common-law wife, Lahoma Ledford, filed suit as a "surviving spouse" under the Texas Wrongful Death Act, TEX. CIV. PRAC. & REM. CODE ANN. § 71.001–.031 (Vernon 1986). She

sought damages from the appellants (and other medical care providers who are not parties to this appeal) for her loss of companionship, love, enjoyment, and services, and for her past and future mental anguish, resulting from John's death.

Appellants asked for summary judgment denying damages to Lahoma on the ground that she was barred from prosecuting her suit because she had not proved the existence of her common-law marriage to John within one year from the date of his death as required by TEX. FAM. CODE ANN. § 1.91(b) (Vernon 1993). The trial court denied appellants' motions for summary judgment against Lahoma, and the case was tried to a jury.

The jury verdict was against appellants as well as their respective professional associations, which were co-defendants. The appellants and their professional associations filed a joint motion for judgment notwithstanding the verdict. The trial court partially granted that motion by entering judgment that Lahoma take nothing against the two associations, and they were dismissed from the lawsuit with prejudice. The court partially granted the appellants' part of the motion by granting judgment that Lahoma take nothing on the claims she had asserted on behalf of John's *estate* against the appellants.

In accord with the jury verdict on her personal claims, the court awarded Lahoma a $150,000 judgment against the appellants. The trial court then subtracted $50,000 as a dollar-for-dollar credit that the appellants had timely elected because Lahoma had compromised and settled with four co-defendants before trial. The net judgment against the appellants, jointly and severally, awarded Lahoma $100,000 in actual damages and $40,440.25 prejudgment interest, plus postjudgment interest and costs of court.

■ An action to recover damages for wrongful death is for the exclusive benefit of the surviving spouse, children, and parents of the deceased. TEX. CIV. PRAC. & REM. CODE ANN. § 71.004(a) (Vernon 1986). The appellants' first point of error attacks the trial court's denial of their motions for summary judgment and denial of their motion for judgment notwithstanding the verdict.

■ When a party moves unsuccessfully for summary judgment and subsequently loses on a conventional trial on the merits the denial of that motion is not reviewable on appeal. *Harris County v. Dillard,* 841 S.W.2d 552, 554 (Tex.App.—Houston [1st Dist.] 1992), rev'd on other grounds, 883 S.W.2d 166 (Tex.1994); *Ferguson v. Kelly,* 728 S.W.2d 397, 398 (Tex.App.—Beaumont 1987, no writ). Accordingly, we need not address the portion of the first point of error that complains of the denial of summary judgment to the appellants.

■ Appellants argue that under TEX. FAM. CODE ANN. § 1.91(b) (Vernon 1993), Lahoma had only one year from John's May 4, 1990 death (the date their common-law marriage ended) in which to prove in a judicial, administrative, or other proceeding that their common-law marriage had existed. At the time that John died, and when this suit was filed, section 1.91 was entitled "Proof of Certain Informal Marriages" and read as follows:

(a) In any judicial, administrative, or other proceeding, the marriage of a man and woman may be proved by evidence that:

(1) a declaration of their marriage has been executed under Section 1.92 of this code; or

(2) they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married.

(b) A proceeding in which a marriage is to be proved under this section must be commenced not later than one year after the date on which the relationship ended or not later than one year after September 1, 1989, whichever is later.

TEX. FAM. CODE ANN. § 1.91 (Vernon 1993). *Dannelley v. Almond,* 827 S.W.2d 582, 583 (Tex.App.—Houston [14th Dist.] 1992, no writ) held that this version of section 1.91(b) did not violate either article I, section 13 (open courts clause) or section 3 (equal pro-

tection clause) of the Texas Constitution.[1]

That Lahoma did not comply with any part of section 1.91 is undisputed.

Appellants contend that because she did not comply, Lahoma never lawfully acquired the status of a "surviving spouse" and therefore had no standing to sue under the Wrongful Death Act.

Appellants submit that *Villages of Greenbriar v. Torres,* 874 S.W.2d 259, 261, 264 (Tex.App.—Houston [1st Dist.] 1994, writ denied) supports their contention that because Lahoma did not comply with section 1.91(b) within one year after John's death, she is estopped or barred from claiming to be a common-law spouse in order to qualify for relief under the Wrongful Death Act or any other law in which the standing of "surviving spouse" is essential to the relief sought. In *Torres,* the appeal was from a summary judgment granted by the probate court, and the parties argued on appeal the question whether section 1.91(b) applied to the wrongful death and survival statutes when determining who can sue and recover under those statutes. *Id.* at 265. However, the *Torres* court declined to answer, saying that issue "was neither before the probate court or this Court." *Id.*

Nevertheless, the effect of section 1.91(b) was addressed in *Mossler v. Shields,* 818 S.W.2d 752, 754 (Tex.1991):

> Once the limitation pursuant to this statute has run, a party's subsequent claim of the existence of a common-law marriage stemming from the original relationship is barred—achieving the same result as estoppel on the basis of a dismissal with prejudice.

*Mossler* was a divorce action in which a woman sued to end her alleged common-law marriage. However, she had claimed the same common-law marriage in an earlier divorce action that she had filed against the same man in another county. Before the parties' common-law marriage could be

proved in the prior suit, it had been dismissed with prejudice for discovery abuse.

*Mossler* does not disclose whether the one-year limitation period of section 1.91(b) had expired by the time the same common-law marriage was asserted in the second divorce suit. The Supreme Court merely held that once the first trial court dismissed with prejudice the common-law wife's claim about common-law marriage, the dismissal was equivalent to a final judgment on the issue of whether such a marriage existed. *Id.*

Although the Supreme Court devoted much of its *Mossler* opinion to an explanation of the public policy rationale for its support of trial court sanctions for discovery abuse, the opinion leaves no doubt that once the limitation period of section 1.91(b) has expired, a subsequent claim of the existence of a common-law marriage is barred. *Id.* The opinion does not limit that effect only to divorce actions, and we conclude that unless negated by the conflicting language of another statute, a plea based on the limitation of section 1.91(b) could be available in any legal proceeding to bar proof that a common-law marriage had existed.

The statute of limitations applicable to a plaintiff who sues for wrongful death on a theory of medical negligence is TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01. *See Bala v. Maxwell,* 909 S.W.2d 889, 891, 893 (Tex. 1995). The pertinent part of the statute as it applies to this suit is:

> *Notwithstanding any other law,* no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or hospitalization for which the claim is made is completed. . . .

TEX. REV. CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Pamph.1996) (emphasis added). The Supreme Court has held that the words "notwithstanding any other law" confirm the

---

1. Section 1.91(b) was amended to provide that if a proceeding in which the marriage is to be proved is not begun before the second anniversary of the date on which the parties separated and ceased living together, there is a rebuttable presumption that they did not enter into an agree-

ment to be married. Act of June 14, 1989, 71st Leg., R.S., ch. 369, § 9, 1989 Tex. Gen. Laws 1458, 1461, amended by Act of June 16, 1995, 74th Leg., R.S., ch. 891, § 1, Tex. Gen. Laws 4404.

Legislature's unequivocal intent that, when the time limitations of section 10.01 conflict with another law, section 10.01 governs. *Bala*, 909 S.W.2d at 892–93.

Here, appellants contend that article 4590i, section 10.01 and section 1.91(b) have no conflict, and are in harmony. They argue that although section 1.91(b) is a statute of limitations, its effect should not be interpreted as shortening the two years available under article 4590i, section 10.01 for filing a wrongful death suit. Instead, appellants ask that we construe section 1.91(b) as simply a formality that a common-law spouse must comply with in order to acquire a *standing* that is prerequisite to bringing a wrongful death or survivorship suit. Plainly, section 1.91 provides a mechanism to acquire that standing, but it is equally clear that the 1989 version of section 1.91(b) would have the effect of a one-year statute of limitations if applied to a wrongful death or survivorship suit brought by a surviving common-law spouse who did not comply with section 1.91 within one year of the injured spouse's death.

We conclude that the version of section 1.91(b) in effect when John died on May 4, 1990 provided a limitations mechanism that would shorten the time within which Lahoma was entitled to file her claims in this suit and that its language directly conflicts with article 4590i, section 10.01. Accordingly, we hold that section 10.01 governs this case, and because Lahoma filed this suit within the two years allowed by section 10.01, her claims were not barred by limitations.

▮ Although we have determined that section 1.91(b) does not bar Lahoma's case as a statute of limitations, we must decide the question of her *standing* to prosecute this suit and whether the parties' stipulation affirmed her standing as John's surviving common-law spouse even though she did not prove her marriage under section 1.91.

Lahoma filed this suit on November 15, 1991, and despite the fact that she had not previously proved her common-law marriage status, the attorneys for each of the parties to the suit signed a written stipulation after the trial began. The stipulation, which was accepted by the court and made a part of the record, agreed that Lahoma and John had a valid common-law marriage prior to and at the time of John's death.

▮ Parties in open court are allowed to narrow the issues presented to the trial court, provided they do so by a signed written agreement that is filed in the trial record. TEX. R. CIV. P. 11; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979). A "stipulation" that is made pursuant to rule 11 is defined as an agreement, admission, or concession made in a judicial proceeding by the parties or their attorneys about a matter that is incident to the trial. *Ortega–Carter v. American Int'l Adjustment*, 834 S.W.2d 439, 441–42 (Tex.App.—Dallas 1992, writ denied). When considering a stipulation, the trial court must distinguish between one in which the parties have agreed on the *truth of specific facts* and one in which they have agreed only that an item to be offered in evidence is *admissible*, with no agreement as to its truthfulness. *Austin v. Austin*, 603 S.W.2d 204, 206 (Tex.1980). A trial stipulation that is unclear or ambiguous should be disregarded by the court. *Mann v. Fender*, 587 S.W.2d 188, 202 (Tex.Civ. App.—Waco 1979, writ ref'd n.r.e.). This requires a court to determine whether the wording of the stipulation expresses the intention of the parties under all the circumstances, including allegations of the current pleadings and the parties' attitudes about the issues to be tried. *Discovery Operating, Inc. v. Baskin*, 855 S.W.2d 884, 886–87 (Tex. App.—El Paso 1993, orig. proceeding).

The stipulation signed by the attorneys for Lahoma and the appellants was one in which the parties agreed to the truth of specific facts: that Lahoma and John had a valid common-law marriage prior to and at the time of John's death. There is no ambiguity or lack of clarity in their stipulation. Its text neither restricts the purposes for which the agreement may be used in the trial nor reserves the right of appellants to continue to argue that Lahoma's claim of the existence or validity of the marriage is barred by section 1.91. Appellants made no objection when Lahoma testified that she and John married on September 14, 1982 and remained

"man and wife" continuously until the day he died.

We hold that the stipulation was a judicial admission by the appellants that estops them from disputing the fact or validity of Lahoma's common-law marriage to John. The stipulation established the existence of the marriage without the necessity of proof, relieved Lahoma of any duty to show compliance with section 1.91, and established her standing to prosecute this suit. The stipulation is conclusive upon all parties. *See Hennigan v. I.P. Petroleum Co., Inc.* 858 S.W.2d 371, 372 (Tex.1993); *Herschbach v. City of Corpus Christi,* 883 S.W.2d 720, 733–34 (Tex. App.—Corpus Christi 1994, writ denied). The first point of error is overruled.

■ We next address point of error number three, which is that the trial court erred in denying appellants' motion to strike veniremember Guerra for cause on the ground that his answers to questions during voir dire of the jury panel clearly showed that he was both biased and prejudiced against the appellants. As applied to veniremembers, the Supreme Court has defined bias and prejudice:

Bias, in its usual meaning, is an inclination toward one side of an issue rather than to the other, but to disqualify, it must appear that the state of mind of the juror leads to the natural inference that he will not or did not act with impartiality. Prejudice is more easily defined for it means prejudgment, and consequently embraces bias; the converse is not true.

*Compton v. Henrie,* 364 S.W.2d 179, 182 (Tex.1963).

■ As a matter of law, a veniremember who admits bias or prejudice is disqualified to serve as a petit juror, and he cannot revive his eligibility to serve by recanting an earlier expression of bias or prejudice. *Id.; Sullemon v. U.S. Fidelity & Guar. Co.,* 734 S.W.2d 10, 14 (Tex.App.—Dallas 1987, no writ); *Carpenter v. Wyatt Const. Co.,* 501 S.W.2d 748, 750 (Tex.Civ. App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). It is only when the evidence does not conclusively establish a veniremember's automatic disqualification for bias or prejudice

that we are required to examine the trial court's ruling under an abuse of discretion standard, in a light most favorable to that ruling. *Garza v. Tan,* 849 S.W.2d 430, 432 (Tex.App.—Corpus Christi 1993, no writ).

During the voir dire, appellants' attorney elicited answers from prospective jurors Caudill, Thompson, and Somerville, consecutively, establishing that none of them could be fair to the appellants because of the results of medical treatment experienced by members of their own families. First, veniremember Caudill was asked whether she could look at the facts objectively and in a neutral way. She replied, "I don't think so." Next, veniremember Thompson was asked whether she could be fair and objective and neutral in looking at the medical facts of the case, and she replied, "I don't think I could...." Next, appellants' attorney questioned veniremember Somerville, and their exchange ended with:

[Q.] All right. You feel that based upon your past experiences, you could not be fair and objective in looking at the medical facts as they have been testified to so that both sides start out evenly in this case; is that correct, ma'am?

[A.] That is true.

Immediately, appellants' attorney asked the following question of the jury panel, and the only response was by veniremember Guerra:

[Q.] Is there anybody else, after we've listened to this—

[A.] *I feel the same way.* ... My dad died of a heart attack also. I just don't like to talk about it, because it brings back bad memories. But yeah, I think it would have a—I would have a problem with that.

[Q.] [A]s a result of that, you feel that Mrs. Ledford would be—you would feel for her and put her—*sort of put her ahead of the defense in this case, from just an even-Steven point of view and looking at the medical facts?*

A. *I think so.* Like I said, my dad was—after that, for a long time, he was in a coma, so I seen [sic] him suffer a lot, and I know what it did to me. [Emphasis added.]

Veniremember Thompson was excused because of hardship. The trial court granted appellants' motion to strike Caudill and Somerville for cause, but denied their same motion as to Guerra. That denial is the subject of the third point of error.

When voir dire began, the court told the entire jury panel about the term "preponderance of the evidence," then asked the panel if everybody understood the explanation. There was no verbal response from any panel member. The court told the panel that the jury would be given an instruction about the burden of proof and said, "that's the burden of proof you're to use in the case, and if you can't do that, I need to know that right now. Anybody?" Again there was no verbal response from members of the jury panel. The judge then said, "I'm going to assume from your silence, then, that everybody can follow that instruction and use that burden of proof."

Lahoma suggests that silence by members of the jury panel during the judge's explanations and general queries at the start of voir dire established that veniremember Guerra had no bias or prejudice. Lahoma specifically argues that Guerra's answers of "I think so" and "I feel the same way" did not conclusively establish his bias or prejudice. The arguments are not persuasive.

During voir dire, appellants' attorney sequentially asked veniremembers Caudill, Thompson, Somerville, and Guerra for the same information: Would they view the medical evidence in an objective and neutral manner? We disregard Thompson's answers because she was later excused. But Caudill and Somerville were later struck for cause as a result of their answers. After finishing with veniremember Somerville, the next question asked by appellants' attorney was, "Is there anybody else, after we've listened to this—?" then Guerra answered.

Instead of isolating Guerra's answers, we consider them in the context of the *questions* that had just been answered by veniremembers Caudill, Thompson, and Somerville. In that context, Guerra's answers lead to the natural inference that he was telling the court that if he became a member of the trial jury, he could not act with impartiality. *See*

*Compton,* 364 S.W.2d at 182. Guerra was replaced by veniremember Killian, who was among the ten jurors who signed the verdict that was adverse to the appellants.

At the close of voir dire, and before appellants exercised their peremptory challenges, appellants' attorney told the court that they would be forced to use a peremptory strike on veniremember Guerra if their motion to strike for cause was not granted and would be forced to keep veniremember Killian on the panel, on whom they also wished to use a peremptory strike. When the court denied appellants' motion to strike for cause, appellants were forced to use a peremptory strike on Mr. Guerra and were unable to use it on Mr. Killian. Appellants also requested an additional strike for use on Mr. Killian, but the request was denied. We hold that Guerra was disqualified as a matter of law from serving as a juror in the trial because his answers during voir dire expressed his bias toward the case, and that the appellants' motion to strike Guerra for cause should have been granted. Point of error number three is sustained.

Because we are reversing the judgment and remanding this case for a new trial, we need not consider appellants' second point of error challenging the legal and factual insufficiency of the evidence or their fourth point of error, which is that the trial court erred in not sustaining appellants' objections to the jury charge. We will, however, address Lahoma's cross-points of error.

Cross-point number one contains two complaints: first, that the trial court erred by disregarding the part of the jury's verdict that awarded the late John Ledford damages for personal injury; second, that because Lahoma was John Ledford's wife and only heir, she is entitled by the survival statute to recover those damages on behalf of his *estate,* and that the trial court erred by disregarding the jury's verdict and granting the appellants a judgment that Lahoma take nothing on her claims as heir to John's estate.

Lahoma argues that because John died without a will, without children and without real property, his entire estate vest-

ed immediately in her as his only heir. *See* TEX. PROB. CODE ANN. §§ 37, 38 (Vernon 1980). We accept Lahoma's assertion that the unconditional stipulation that she and John had a valid common-law marriage, prior to and at the time of John's death, established her status as John's heir. She contends that John's action against appellants for personal injury survives to her (as an heir), John's legal representatives, and his estate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(b) (Vernon 1986).

From the start, Lahoma's pleadings styled her lawsuit under the survival statute as "LAHOMA LEDFORD, Individually and as Heir to the Estate of JOHN LEDFORD, Deceased." In her pleadings, she consistently identified herself as John's heir but did not plead that she was the "personal representative" of his estate. The Probate Code states that the terms "personal representative" or "representative" *include* an executor, independent executor, administrator, independent administrator and temporary administrator. TEX. PROB. CODE ANN. § 3(aa) (Vernon 1980). Nothing in the wording of the subsection suggests that it is the exclusive list of persons who may become an estate's "representative." Another subsection states that the term "heirs" denotes persons, including the surviving spouse, who are entitled under the statutes of descent and distribution to the estate of a person who dies intestate. TEX. PROB. CODE ANN. § 3(*o*) (Vernon 1980).

After her original petition and before trial, Lahoma filed eight amended petitions. All but the first amended petition are included in the record on appeal, and those are silent about the existence or necessity for an administration of John's estate. Lahoma went to trial on the allegations of her eighth amended petition.

■ A general rule is that before an heir at law can maintain a suit that is filed to recover property belonging to the estate, the heir must allege and prove that there is no administration pending and none necessary. *Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971). The Supreme Court explained that the reason for the rule is that the personal representative of an estate is *ordinarily* the only person entitled to sue to recover an estate's property. *Id.* The Supreme Court's use of the word "ordinarily" is significant to the explanation because it implies that there are exceptions to the rule. *Frazier* was a suit brought by a son whose deceased father had been a tenant leasing farmland. The son sought damages for the landlord's alleged breach of the lease. The Supreme Court concluded that the lease did not terminate at the father's death, that his estate had debts, and that the leasehold estate was a community asset vested in the widow and heir who held it subject to the payment of community debts and subject to the right of a duly appointed and qualified personal representative to possess and control the lease during administration of the estate. *Id.*

It has been said that the general rule of *Frazier* governs plaintiffs who sue solely as heirs to recover property of the estate. *Johnson v. Holly Farms of Texas, Inc.*, 731 S.W.2d 641 (Tex.App.—Amarillo 1987, no writ). However, Lahoma insists that a formal administration is not required before she is entitled to assert her deceased husband's personal injury claims under the survival statute. She argues that there is no valid reason to apply the *Frazier* rule to a suit in which the surviving spouse (as the only heir) seeks damages for personal injury to the deceased spouse because the language of the survival statute authorizes an heir to sue. TEX. CIV. PRAC. & REM. CODE ANN. § 71.021(b). She stresses that the survival statute does not restrict its type of suit to an estate's legal representative and "does not specify by whom a cause of action for recovery of [a] survival claim must be brought." *See Goode v. Shoukfeh*, 863 S.W.2d 547, 550 (Tex.App.—Amarillo 1993, no writ).

To support her argument, Lahoma cites *Latham v. Mosley's Estate*, 351 S.W.2d 123, 125 (Tex.Civ.App.—Beaumont 1961, writ dism'd), a venue case in which the cause of action was based on former TEX. REV. CIV. STAT. ANN. art. 5525, the survival statute later replaced by section 71.021 of the TEX. CIV. PRAC. & REM. CODE. There, the estate was the defendant, and the plaintiff claimed damages for personal injury caused by the deceased during his life. A question integral to the venue determination was who should be con-

sidered "legal representatives" of the deceased within the scope of the survival statute. The *Latham* court, relying on *McCampbell v. Henderson,* 50 Tex. 601, 611, 613 (1879), concluded that, within the meaning of the survival statute, the term "legal representatives" includes the widow and heirs of a deceased person. *Latham,* 351 S.W.2d at 125. Although the Supreme Court's opinion in *McCampbell* is old, its reasoning is still sound:

> [I]f there is no administration upon the estate … and the facts show that none is necessary or desired by those interested in [the] estate … and the heirs are in possession of his property, they are in such sense the representatives of their ancestor … [and] an original suit may be brought. …

*McCampbell,* 50 Tex. at 611. Also:

> [S]uit is maintainable … *in view of the fact that they stand in his place and are to be regarded as his representatives . …*

*Id.* at 613. (emphasis added).

Unlike the case now on appeal, the petition in *Latham* included allegations that there was no administration of the deceased's estate, no necessity for any, and that he left no will. *Latham,* 351 S.W.2d at 124. However, the *Latham* court said:

> While the petition in the present case does not directly allege Moseley left an estate, this is its purport. Neither was there a direct allegation that the heirs had taken possession of any of such estate, but Sec. 37 of the Probate Code vests title in them and in order to adjudicate the rights of the parties involved, we think the heirs necessary parties.

*Id.* at 125.

Lahoma's testimony established that she was John's only heir and that the assets of the estate were minimal. In uncontroverted testimony, she told the jury that, by agreement with other family members, she had taken the assets as John's only heir. She testified that the debts were paid or provided for.

 The evidence is that the family had resolved the estate's disposition and that no administration was necessary, for it would have served no purpose. Nearly one hundred years have passed since a Texas appellate court held that, notwithstanding the provisions in a will, its beneficiaries may agree among themselves on a different division of the property bequeathed to them. *Stringfellow v. Early,* 15 Tex.Civ.App. 597, 40 S.W. 871, 874 (1897, no writ). This principle of law has been approved more recently as the "family settlement doctrine," which affords devisees of a will the right to agree to divide property as they wish, as an *alternative* to formal administration. *Salmon v. Salmon,* 395 S.W.2d 29, 32 (Tex.1965); *In re Estate of Hodges,* 725 S.W.2d 265, 267 (Tex.App.— Amarillo 1986, writ ref'd n.r.e.); *Estate of Morris,* 577 S.W.2d 748, 755 (Tex.Civ.App.— Amarillo 1979, writ ref'd n.r.e.). Because the family settlement doctrine is "a favorite of the law" where a will exists, *Hodges,* 725 S.W.2d at 267, we perceive no sound reason why it should not apply to cases where the deceased left no will and his estate vested in his heirs under section 37 of the Texas Probate Code.

Finally, it is significant that our Legislature has provided that no administration, community or otherwise, is necessary when a husband or wife dies without a will and the community property passes to the survivor. TEX. PROB. CODE ANN: § 155 (Vernon 1980). The evidence in the record is that except for his personal injury claim, all of John's property was community property and passed to Lahoma as survivor.

 The stipulation established that Lahoma was John's wife, and the evidence established that she is John's widow. Adhering to the principles stated in both *McCampbell,* and *Latham,* we conclude that she is a "legal representative" of the deceased for purposes of the survivorship statute. We hold that neither section 71.021(b), nor *Frazier,* require an administration of a decedent's estate before a surviving spouse is entitled to assert personal injury claims for the estate under the survival statute.

The trial court erred in disregarding the part of the jury's verdict that awarded John Ledford damages for personal injury and in granting judgment that Lahoma take nothing

on that claim as the heir to John's estate. On the evidence, we conclude that the trial court abused its discretion by denying Lahoma's request that she be allowed to file her ninth amended petition to conform her pleading to the evidence. *See* Tex. R. Civ. P. 66, 67; *Chapin & Chapin v. Texas Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 665 (Tex. 1992); *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939–40 (Tex.1990). Both of Lahoma's cross-points of error are sustained.

Having found error in the trial court's judgment, it is reversed and the cause is remanded for a new trial.