COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-042-CV

 

DAVID W. SMITH, D.D.S. AND                                            APPELLANTS

WIFE,
CATHY C. SMITH

                                                   V.

 

WILLIAM DEAN, M.D. AND CARDIOVASCULAR                         APPELLEES

AND
THORACIC SURGICAL GROUP OF WICHITA

FALLS,
P.A., D/B/A CARDIOVASCULAR AND 

THORACIC
SURGICAL GROUP OF WICHITA FALLS

 

                                              ------------

 

             FROM
THE 78TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

 

I.  Introduction








In this medical malpractice
case, appellants Dr. David and Mrs. Cathy Smith appeal the jury=s verdict and trial court=s judgment for appellees Dr. William Dean and the Cardiovascular and
Thoracic Surgical Group of Wichita Falls, P.A., d/b/a Cardiovascular and
Thoracic Surgical Group of Wichita Falls. 
In three related issues, appellants argue that several venire members
were biased as a matter of law, that those venire members were not
rehabilitated, and that the trial court abused its discretion in denying
appellants= challenges
for cause to those individuals.  We
affirm.

II.  Background Facts

On January 31, 2002, Dr.
Smith, a dentist, underwent aortic valve replacement surgery to correct a blood
flow problem that Dr. Dean had helped diagnose. 
During the surgery, which was performed by Dr. Dean and Dr. Olyn M.
Walker, Dr. Smith suffered an injury due to inadequate blood flow.
Consequently, Dr. Smith required a heart transplant, which he received eight
days later.  Because of these injuries,
appellants filed a medical malpractice suit against appellees alleging direct
and vicarious health care liability claims.

A.  Questions Concerning Burden of Proof During
Voir Dire

At voir dire, appellants= trial counsel questioned several of the venire members about their
feelings regarding medical malpractice claims and the  burden of proof required to find economic
damages:

MR. BRILEY: . . . .  I want to switch gears a little bit and talk
to you about some things that come up in these types of lawsuits.  We are seeking money damages for the destruction
of David Smith=s
heart.  And the Judge will tell you
later, the 12 that are on the panel, that the burden of proof that I have to
convince you that the doctor made a mistake that=s
legally correctible [sic] by ordering him to pay money, is that he must do
something below the standard of care. 
That is, he must do something that an ordinary prudent physician in that
field either would or wouldn=t have done, okay.

 








And that I must prove that with a level of what=s
called a preponderance of the evidence, that is, the greater weight and degree
of credible evidence, okay?  

 

In Texas we would say that=s
crossing the 50 yard line.  The greater
weight would be crossing the 50 yard line. 
Don=t
have to score a touchdown, that might be in a criminal case, but you=ve
got to be more likely than not.

 

Does anyone here feel that that standard, more
likely than not, is too low if you=re suing a doctor, that it
ought to be like to the 80 yard line or 90 yard line?  It=s got to be more than more
likely than not?  Anyone feel that way?

 

Yes, sir.

 

VENIREPERSON GRIEB:  Are youCare you saying by your
question, are youClet me
rephrase your question to see if I understand it.  What you=re driving at, are you saying
doctors should be held to a higher standard?

 

MR. BRILEY: 
No.

 

VENIREPERSON GRIEB:  You=re not saying that?

 

MR. BRILEY: 
No.  I=m
asking you if you=re
going to hold me to a higher standard because I=m
suing a doctor?

 

VENIREPERSON GRIEB:  So you=re trying to put yourself on
the same plateau as the doctor?

 

MR. BRILEY: 
The Judge is going to tell you that the burden of proof in this case is
that the Plaintiff must prove whatever they=re saying, that the doctors
fell below the standard of care on the basis, on a standard, a yard stick
called preponderance of the evidence, that is more likely than not.

 








It=s not like in a criminal case
beyond all doubt, beyond a shadow of a doubt, beyond a reasonable doubt.  It=s more likely than not.

 

And what I=m asking is that because we=re
suing physicians, does someone say, if I=m going to hold a doctor
responsible, it has to be higher than more likely than not?  Anyone feel that way?

 

Yes, sir.

 

VENIREPERSON HUFFSTUFLER:  Brady Huffstufler.

 

MR. BRILEY: 
Mr.  Huffstufler.

 

VENIREPERSON HUFFSTUFLER:  I don=t know what kind of money we=re
talking about or what, it needs to be more than 50 percent sure if we=re
going to make him payCI=m
sure it=s a
substantial amount of money, I don=t know, but if you=re
going to make him pay that, I=d like to think that if I was
sitting up there, that the jury was more than 50 percent sure that I messed up
before they=re
going to make me pay.

 

MR. BRILEY: 
Okay.  Let me get this
straight.  You think that it ought to be
more than 50 percent.  Do you think it
ought to be more than some higher number?

 

VENIREPERSON HUFFSTUFLER:  I would think in order for us to find himCto
pay him money, we would need to be 100 percent sure that he made a
mistake.  Because if we=re
not, who says he is liable for whatever happened?

 

MR. BRILEY: 
Who agrees with Mr.  Huffstufler,
that its got to be 100 percent? Keep your hands up please.  

 

Twenty-nine venire members raised their hands in response.[1]








MR. BRILEY: . . . .  All the folks that just raised your hand, as
far as you=re
concerned, even if the Judge says, Mr. Briley only has to prove his case by a
greater weight and degree of credible evidence, is it true that all of ya=ll
say, I can=t do
that.  No matter what the Court tells me,
I have to have more than 51 percent.  Is
there anybody that disagrees with that statement?

 

Counsel for appellees
objected to the form of the question and to Mr. Briley=s definition of the burden of proof. 
After the trial court sustained the objection, Mr. Briley attempted to
clarify the response by asking the following question:

For the folks that raised their hand that I
called off the number, my question is this: Even if the Judge instructs you
that the standard that I have to prove the case is a preponderance of the
evidence, that is the greater weight and degree of credible evidence, 51
percent, are all of the folks that raised their hands, is your attitude that
you cannot follow the Court=s instructions because you
need more than 51 percent to prove a breach of the standard of care in a
medical negligence case?  

 

Is there anyone that disagrees with that?

 

None of the venire members raised their hands or
otherwise indicated their agreement or disagreement with the question.

Appellant next questioned the
venire members regarding the burden of proof required for noneconomic damages:








MR. BRILEY: 
I want to switch gears a little bit more, and Mr.  Huffstufler, I think, zeroed in on this.  Some folks may say, you know, It=s
okay, I feel comfortable with this burden of proof at this greater weight and
degree thing, this 51 percent thing if we=re talking about reimbursment
of, say, medical expenses, something that you=ve
lost.

 

How many here on the panel feel that I would have
to prove the case beyond the preponderance if we=re
seeking damages like pain and suffering or non-economic damages?  Is there anyone that feels that way?

 

Mr. 
Huffstufler, how do you feel if I=m seeking a million dollars
or whatever the number is for non-economic damages?  What level of proof would you hold me to?

 

VENIREPERSON HUFFSTUFLER: I wouldn=t
feel comfortable making him pay anything unless I was 100 percent sure that he
should, that it was his fault, whatever happened.  And like I say, I=m
going to be 100 percent sure.  Who am I
to make him pay for something that I=m not completely certain that
he owes him that?

 

Mr. Briley then asked a final question, which
regarded damages in general:

Okay, Now I apologize if I have to go through
this one by one, but who of youCif you=ll
raise your handsCagree
with Mr.  Huffstufler?  That is, that you feel you cannot award money
for any damages unless you=re 100 percent certain that
the doctor made the mistake?  Raise your
hands, please?

 

Thirty-three venire members responded
affirmatively to this question.[2]  These venire members represent the Ablock group@ that the
trial court referred to throughout the hearing on challenges for cause.








Mr. Briley then addressed the
instruction that all jurors set aside bias, sympathy, and prejudice in deciding
the facts of the case:

Okay, there=s another instruction that
the Court is going to give you.  In fact,
it usually is the first instruction, and that says that you cannot use bias, sympathy
or prejudice in deliberating if you=re on the jury; bias,
sympathy and prejudice.

 

So, for example, if someone were sympathetic to
David Smith and his wife, you couldn=t use that sympathy to find
something in the case.  Or by the same
token, if you were sympathetic to one of the physicians, you=d
have to set that aside.

 

Is there anyone here who feels like, I just can=t do
that?  Even if the Court tells me I have
to do that I just can=t set
that aside?

 

None of the venire members responded to this question, and Mr. Briley 

 

continued his questioning.

We had a lot of people that said, like Mr.
Huffstufler, that you have to be absolutely sure before you can award any
damages.  What I want to find out is if
there=s
somebody here who=s not
quite as strong as Mr. Huffstufler, who says, I can award some damages but
there are other types of damages that I can=t award unless you prove by
an absolute certainty or 100 percent that the doctor did something wrong?  Okay, are you with me?

 

And I understand Mr. Huffstufler=s
position, but is there someone who says, Well, I can award economic damages
loss of wages or medical expenses on this preponderance standard, but when you
want something for like non-economic damages, that you have to show me
more?  Is there anyone who feels that way?

 

VENIREPERSON RAYMOND SMITH: Yes.

 

MR. BRILEY: Mr. 
Smith.  How do you feel about it?








 

VENIREPERSON RAYMOND SMITH: Well, I=m
stronger than a preponderance of the evidence but not beyond a shadow of a doubt
type situation.  I=d
have to have some kind of gross negligence or something like that.

 

MR. BRILEY: Okay. 
So in order for me to get you to award non-economic damages, pain and
suffering for example, it would have to be more than a preponderance of the
evidence.  Is that correct?

 

VENIREPERSON RAYMOND SMITH: Yes, sir.

 

Mr. Briley asked the panel who agreed with Venireperson Smith.  The only venire member who responded
affirmatively and who ended up being seated on the jury was Sherry Baker (#26).

 

B.  Rehabilitation of Jurors

Mr. Chamblee, counsel for Dr.
Sudarshan,[3]
explained to the venire members the importance of following the trial court=s instructions in applying the correct burden of proof.  Mr. Chamblee explained that the trial court
would define Apreponderance
of the evidence@ and then
addressed the panel=s previous
responses to Mr. Briley=s questions:









Now here=s the question.  Some of y=all raised your hand in
response to questions saying, for instance, you raised your hand and said, Oh,
I just personally believe I need to be certain. 
I need 100 percent.  And It=s
okay to think, you know, just personally, I just would like to see and have
more. 

 

The question is more detailed than that, and that
is this: Regardless of your personal belief or what you might like the law to
be or what you might like to see, will you abide by or disregard the Court=s
instructions?

 

Do you understand the question I=m now asking you?

 

First row, do y=all
understand the question?

 

Second row, do you understand the question I=m
asking you?  Third 

row? Fourth row?  Fifth row?

 

Here=s my question.  A bunch of you raised your hand in response
to questions asked by Mr.  Briley, said
100 percent.  If you want to find someone
at fault, 100 percent.  I>m
discussing with you if the Court instructs you, you are to be guided by the
preponderance of the evidence in finding yes to any question asked, and
preponderance of the evidence is greater weight and degree of credible
evidence, and he instructs you to follow it, is there anybody here who needs to
raise their hand and tell me, I will, because of my personal opinions, my
personal beliefs, I will disregard what the Court is instructing me to do?  I won=t follow it, I=ll do
my own thing?

 

Is there
anybody here who says and needs to raise their hand to say, that=s what I=m going to
do?  

Venireperson Grieb asked for clarification about
whether refusal to follow the instructions constituted a crime.  The trial court responded as follows:

Let me help answer that just a moment, if I
could.  The answer to that is no, and the
purpose of this proceeding and this part of the proceeding or voir dire is to
really find out if you can or cannot follow that kind of instruction, and it=s
okay again if you can=t.

 








If you say, My [sic] personal conviction is such
that even if the Judge tells me to do one thing, my personal conviction is that
I can=t do
that, then that=s the
purpose of this part of the trial is to say, I really can=t do
that.

 

And I think that=s
supposed to be the purpose that we=re all trying to get to is to
find out if you have such a strong held conviction that if I give you an
instruction on a certain thing whether it=s burden of proof, whether it=s the
law in some other area, whether or not you can follow that instruction.

 

But if you have personal convictions that say, I
just can=t
follow that instruction, then nothing is going to happen to you.  It=s just that this is the time
to let everybody know that so what we=ll be able to find out about
that. Does that help?

 

VENIREPERSON GRIEB: That helps, yes, sir.

 

Mr. Chamblee then questioned the panel on whether
they could follow the trial court=s instructions on the burden of proof: 

All right. 
Now, with that being said, I=m going to go row by row real
quick so I understand.  In other words,
the Judge will give you the instruction. 
It=s
okay to have a personal feeling, but he=s going to tell you in our
judicial system, this is what shall guide you in this case.

 

The question
is if you have some personal belief, can you set it aside and follow his
instruction with regard to preponderance of the evidence?








By raising their hands, seven
venire members indicated that they would disregard the trial court=s instructions and require a heightened burden of proof.[4]

C.  Appellants= Challenges for Cause

The trial court next
conducted a hearing on challenges for cause outside the presence of the
jury.  Appellants first challenged the
seven venire members who said they could not follow the trial court=s instructions on the burden of proof even after the trial court and
Mr. Chamblee clarified the process.  The
trial court granted these challenges. 
The trial court also granted appellants= challenge to Venireperson Huffstufler, who was the first from the Ablock group@ to say that
he would require 100 percent certainty before making appellees pay any type of
damages.  The trial court then addressed
appellants= challenges
for cause to those venire members in the Ablock group@ who raised
their hands in agreement with Venireperson Huffstufler.








Well, part of the problem I have with the way you
did it was, it was a little fuzzy because one person saysCand
the person that started it, I granted the challenge to.  But then all of a sudden, one person says it
and it=s, Me
too, Me too, Me too, and you=ve got half the room that
raises their hand.

 

The trial court further
stated that at least one of the questions was not predicated on whether or not
the jurors could follow the court=s instructions on the burden of proof. 
The trial court also expressed concern that the proper definition for Apreponderance of the evidence@ was not given and gave his opinion on the overall questioning.

I thinkCthe problem I have, I think mass hysteria took over when that one guy
stood up and started talking, and that=s what I=m having a
problem with.

The trial court stated that
Mr. Chamblee had rehabilitated the Ablock group@ when he
explained the burden of proof and the importance of following the trial court=s instructions.  The trial court
next noted that appellate courts have accepted rehabilitation and offered to
bring in any of the complained-of jurors for the appellants to examine;
appellants declined this opportunity. 
Subsequently, the trial court held that the Ablock group@ was
rehabilitated with the exception of the seven venire members who had already
been stricken for cause.  See supra
note 4.

D. Peremptory Challenges








The trial court next heard
the parties= peremptory
challenges.  Appellants complained that
they would have insufficient peremptory challenges because the trial court
would not grant challenges for cause for twelve venire members from the Ablock group@:  Frank Holt (#1), Brandy Rhoades (#3), Daniel
Polk (#4), Susan Stratton (#14), Jodi Camp (#24), Sherry Baker (#26), Sally
Brann (#29), Sarah Arredondo (#31), Mary Bentley (#32), Joanne Berend (#33),
Victoria Hagins (#35), and Frank Keith (#36). 
After providing this list to the trial court, appellants asked for five
additional peremptory challenges.  The
trial court denied this request.

Appellants used peremptory
strikes on venire members 19 and 20, but did not use any of their remaining
peremptory strikes on the venire members from the Ablock group@ identified
as having survived their challenges for cause. 
Eight of the venire members who were part of the Ablock group@ that
appellant challenged for cause ended up on the jury.[5]  The jury returned a verdict for appellees.  

III.  Appellants= Three Issues








Appellants first complain
that the trial court abused its discretion by not granting their challenges for
cause for the venire members in the Ablock group@ because
those individuals were biased as a matter of law.  Alternatively, appellants argue that the
trial court abused its discretion by ruling that the venire members had been
rehabilitated.  In their third issue,
appellants argue that regardless of the outcome of the first two issues, the
trial court erred by denying their challenges for cause.  Because these issues are related, we address
them together.

A.  Standard of Review and Applicable Law








Voir dire examination is
largely within the sound discretion of the trial court, and broad latitude is
allowed for examination.  Cortez v.
HCCI‑San Antonio, Inc., 159 S.W.3d 87, 93 (Tex. 2005).  However, Texas law disqualifies venire
members who are unequivocally biased or prejudiced.  Tex.
Gov=t Code Ann. ' 62.105(4) (Vernon 2005).  The
Texas Supreme Court defines bias as an inclination toward one side of an issue
rather than to the other.  Hyundai
Motor Co. v. Vasquez, 189 S.W.3d 743, 751 (Tex. 2006).  Prejudice is prejudgment, which necessarily
includes bias.  Id.  The bias or prejudice applies not only to
parties but also to certain types of cases.  Id. 
A venire member who is unequivocally biased or prejudiced is
disqualified to serve as a juror, and the venire member cannot revive his
eligibility by recanting an earlier expression of bias or prejudice.  Shepherd v. Ledford, 926 S.W.2d 405, 411
(Tex. App.CFort Worth
1996), aff=d, 962 S.W.2d 28 (Tex. 1998). 
Whether a juror is biased or prejudiced may be a factual determination
for the trial court to decide.  Hyundai
Motor Co., 189 S.W.3d at 755. 

Rehabilitation of a venire
member involves further questioning of a venire member who expressed an equivocal
bias as opposed to an unequivocal bias.  Cortez, 159 S.W.3d at 92.  Rehabilitation is allowed because biased
responses may be the result of inappropriate leading questions, confusion,
misunderstanding, ignorance of the law, or merely loose words spoken in warm
debate.  See id.  If a venire member expresses equivocal bias,
further questioning should be allowed to reinforce the biased statement or rehabilitate
the venire member.  Id. at 93.

If a venire member
unequivocally expresses bias, the venire member is disqualified as a matter of
law, and the trial court has no discretion to decide whether to strike the
venire member.  See Malone v. Foster,
977 S.W.2d 562, 564 (Tex. 1998). 
However, trial courts exercise discretion in deciding whether to strike
venire members for cause when bias or prejudice is not established as a matter
of law, and there is error only if that discretion is abused.  Cortez, 159 S.W.3d at 93.  A trial court does not abuse its discretion
by refusing to strike a juror who expresses bias when the juror equivocates or
is Arehabilitated.@  Id. 
In reviewing such decisions, we must consider the entire examination,
not just answers that favor one litigant or the other.  Id.  








B.  Preservation of Error

To preserve the erroneous
denial of a for-cause challenge, a party must use a peremptory challenge on the
venire member at issue, exhaust all of its remaining peremptory challenges, and
notify the trial court that additional objectionable jurors will remain on the
panel.  Id. at 91.  The purpose of the preservation rule is to
allow the trial court to review its ruling before the jury is empaneled and
decide if the party was forced to take objectionable jurors.  See id.; see also McMillin v. State
Farm Lloyds, 180 S.W.3d 183, 194 (Tex. App.CAustin 2005, pet. denied) (holding that a party preserved error where
they notified the court that they had fewer peremptory strikes than the number
of venire members they had challenged for cause, and thus objectionable jurors
would remain unless the court granted more peremptory challenges).

C.  Application and Analysis 








Appellees claim that
appellants did not properly preserve the jury selection error.  We agree in part.  Appellants started with six peremptory
challenges.  When the trial court refused
to strike twelve venire members from the Ablock group,@ appellants
stated that they would not have enough peremptory challenges and requested five
more.  The trial court denied this
request.  Eight of the twelve challenged
venire members made it onto the jury panel. 
Appellants used two peremptory challenges on venire members 19 and 20,
individuals that they had previously challenged for cause unsuccessfully.  Because appellants did not use their
remaining four peremptory challenges on the complained-of jurors from the Ablock group,@ they waived
their objection to these four jurors.  See
Cortez, 159 S.W.3d at 90; see also McMillin, 180 S.W.3d at 194
(holding that appellants waived error for as many objectionable jurors as they
did not strike with peremptory challenges). 


However, appellants preserved
error as to the remaining four jurors because, even if they had used all of
their peremptory challenges to strike the complained-of jurors, four objectionable
jurors still would have remained on the panel. 
See Cortez, 159 S.W.3d at 90; see also McMillin, 180
S.W.3d at 194-95 (explaining that appellants must show the trial court
committed error as to one more juror than the appellants preserved error for in
order to show harm).

After appellants explained
the law to the venire members, several of the them indicated they would want
higher than 51 percent certainty that Dr. Dean made a mistake before they would
make him pay.  However, appellants= trial counsel asked this question regarding the burden of proof in a
confusing manner.  He first asked, A[I]s your attitude that you cannot follow the Court=s instructions because you need more than 51 percent to prove a breach
of the standard of care in a medical negligence case?@  Then, without allowing any
venireperson to respond, he asked, AIs there anyone that disagrees with that?@ 








If trial counsel paused
between these questions and none of the venire members to whom he directed the
first question responded, then their silence could have meant they could follow
the trial court=s
instructions on the  preponderance of the
evidence burden of proof.  However,
because appellants= counsel did
not pause between the two questions, then his use of the words Acannot@ and Adisagree@ in the two
questions, respectively, rendered his query not only a compound question, but
confusing due to the double negative. 
Some of the venire members from the block group may have been
nonresponsive to the first question, some the second, and some nonresponsive
due to confusion, i.e., concerning where to indicate disagreement.  See Cortez, 159 S.W.3d at 92 (stating
that jurors could not be disqualified as a result of leading questions,
confusion, or misunderstanding). 
Therefore, it was likely that the trial court did not disqualify those
jurors because their answers could have been the result of confusion.  See id.








Furthermore, the venire
members from the Ablock group@ did not express unequivocal bias by merely raising their hands. See
Sosa v. Cardenas, 20 S.W.3d 8, 12 (Tex. App.CSan Antonio 2000, no pet.) (holding that venire members who raised
their hands in response to a question could not be disqualified as a matter of
law).  They could have raised their hands
in response to trial counsel=s question about whether they agreed with another venire member.  See id. (holding that several jurors
who merely raised their hands in response to a question propounded to the
entire panel were not disqualified). Further, Sherry Baker (#26) was the only
seated juror that raised a hand when Mr. Briley asked who agreed with
Venireperson Smith, and would require more than preponderance of evidence to
award noneconomic damages.  By
themselves, these responses, or lack of responses, are not enough to establish
bias as a matter of law.  See id.  Because the jurors were not biased as a
matter of law, the trial court had discretion to decide whether to strike them
for cause or to temporarily retain them on the panel for rehabilitation.  Cortez, 159 S.W.3d at 93.

Although the jurors from the Ablock group@ expressed
some bias during voir dire, by the end of the questioning, they were
rehabilitated.  Mr. Chamblee and the
trial court spent time explaining the law and the burden of proof to the
panel.  After his explanation, Mr.
Chamblee asked each row if they understood the law and then asked if they could
follow it and the trial court=s instructions. None of the jurors from the Ablock group@ who were
ultimately empaneled raised their hands or otherwise indicated that they could
not follow the instructions or the law. 
This further questioning and explanation allowed the jurors empaneled
from the Ablock group@ to show that they had been successfully rehabilitated.  See id.








Appellants argue that Shepherd
is controlling in this case because Mr. Chamblee attempted to rehabilitate
through silence.  Shepherd, 926
S.W.2d at 412 (holding that jury member who expressed bias in questioning could
not be rehabilitated through silence). 
We disagree.  In Shepherd,
the juror expressly stated, in individual questioning, that he would be biased
in the case, thus establishing bias as a matter of law.  Id. at 411-12.  Here, unlike the juror in Shepherd,
the jurors empaneled from the Ablock group@ merely
raised their hands in agreement with another juror.  See id.  This is not bias as a matter of law; thus, the
jurors here were able to be rehabilitated. 
See Cortez, 159 S.W.3d at 92; Shepherd, 926 S.W.2d at
412.  Because the trial court was in a
better position to judge the venire members= sincerity and capacity for fairness, it acted within its discretion
by concluding that the Ablock group@ of jurors who raised their hands as if to say, AMe too, Me too@ had been
rehabilitated.  See Cortez, 159
S.W.3d at 93 (holding that if further questioning of an apparently biased
venire member shows that the bias no longer exists, then the venire member need
not be disqualified). 

Because the jurors were not
biased as a matter of law and were successfully rehabilitated by appellees= counsel and the trial court, the trial court did not abuse its
discretion in overruling appellants= challenges for cause. 
Accordingly, we overrule appellants= three issues.








                                          IV.  Conclusion

Having overruled appellants= three issues, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

 

DELIVERED:
May 10, 2007











[1]Of
this group, seven jurors ended up on the jury: Brandy Rhoades (#3), Daniel Polk
(#4), Susan Stratton (#14), Jodi Camp (#24), Joanne Berend (#33), Victoria
Hagins (#35), and Frank Keith (#36).





[2]Of
this group, eight jurors ended up on the jury: 
Brandy Rhoades (#3), Daniel Polk (#4), Susan Stratton (#14), Jodi Camp
(#24), Sherry Baker (#26), Joanne Berend (#33), Victoria Hagins (#35), and
Frank Keith (#36).





[3]Dr.
Sudarshan was dismissed from the case and is not a party to this appeal.





[4]Six
of those seven were from the original block group: Sandra O=Roark
(#8), Dona Rivera (#16), Ron Dodson (#17), Jesse Flick (#18), Mindy Simmons
(#27), and Gary Childers (#53).  The
seventh was Henry Grieb (#28).  Although
Venireperson Simmons eventually said that she could follow instructions, the
trial court still granted appellants= challenge for cause for her.





[5]Of
the Ablock
group,@ the
following venire members made it onto the jury: Brandy Rhoades (#3), Daniel
Polk (#4), Susan Stratton (#14), Jodi Camp (#24), Sherry Baker (#26), Joanne
Berend (#33), Victoria Hagins (#35), and Frank Keith (#36).