Affirmed and Memorandum Opinion
filed October 21, 2010.

In
The

Fourteenth
Court of Appeals



NO. 14-09-00600-CV



MELVIN HOUSTON AND HOUSTON SYNTHESIZED INVESTMENTS,
LLC, Appellants 

v.

Christine
Badeaux Ludwick, Appellee 



On Appeal from
the 334th District Court

Harris County, Texas

Trial Court
Cause No. 2006-67308



 

MEMORANDUM OPINION 

Melvin Houston (“Houston”) and Houston Synthesized
Investments, LLC (“HSI”) appeal from the trial court’s judgment in favor of
Christine Ludwick on her claims for (1) breach of fiduciary duty against
Houston; and (2) unjust enrichment against Houston and HSI.  We affirm.




BACKGROUND

I.         Overview

This appeal arises from a jury trial on claims in
connection with Madyline Badeaux’s March 30, 2001 conveyance of four condominium
units to HSI, an entity owned by attorney Houston.    

The parties do not dispute the contention that
Houston represented Badeaux from early 2001 until April 2002, and that the
conveyance occurred during this representation.  However, the parties dispute
whether the conveyance was made as payment for Houston’s representation of Badeaux
and whether it should be evaluated in light of an attorney’s far-reaching fiduciary
obligations to a client.  The parties also dispute whether the difference
between the purchase price and the fair market value of the condominiums rendered
the transaction unfair and warranted money damages.    

Houston challenges Ludwick’s standing to bring this
suit to recover property on behalf of Badeaux’s estate, and he argues that the
four-year statute of limitations bars her breach of fiduciary duty claim. 
Houston also challenges the admissibility of certain evidence offered by
Ludwick and admitted by the trial court.  Finally, Houston seeks remittitur.[1]  

II.        Factual and
Procedural Background

Houston represented Badeaux in a probate matter from
early 2001 until April 2002.  On March 30, 2001, Badeaux conveyed Sussex
Condominium Units 202, 802, 1105, and 1202 to HSI.  Houston is HSI’s sole owner. 
The deeds were not recorded until 2007.

Badeaux died on September 12, 2004; she was survived
by her son, Jerry Peacock, and her granddaughter, Ludwick.  Badeaux adopted
Ludwick as her daughter when Ludwick was a child, but they eventually became
estranged.  Ludwick did not learn of Badeaux’s death until several years after
the fact.  

In her will, Badeaux listed Peacock and Ludwick as
her children and devised her entire estate to Peacock.  After Peacock died
intestate in 2005, Ludwick was adjudicated to be his sole heir and administratrix
of his estate.  

Although Badeaux died in 2004, Harris County filed a
delinquent property tax suit in 2006 against Badeaux as the record owner of Units
202 and 802.  Ludwick, Houston, and HSI were located and added as defendants in
the tax suit.  Ludwick asserted a cross-claim on behalf of Badeaux’s estate on
May 9, 2008, alleging that Houston breached a fiduciary duty owed to Badeaux by
obtaining the condominiums via HSI in 2001 without paying fair value.  Ludwick
also sued Houston and HSI for unjust enrichment.  Harris County filed a motion
to dismiss the tax suit against Houston, HSI, and Ludwick, and the trial court
granted the motion.

Houston and HSI filed a motion to dismiss Ludwick’s
claims, arguing that Ludwick lacked standing to sue to recover for the condominium
conveyance on behalf of Badeaux’s estate.  The trial court denied the motion.

Houston sought summary judgment on Ludwick’s breach
of fiduciary duty claim based on the four-year statute of limitations.  Ludwick
invoked the discovery rule in opposing the motion, arguing that (1) Houston
concealed the March 2001 conveyance; and (2) the claim was asserted less than
four years after Badeaux died, which was the earliest Ludwick should have
discovered the breach.  The trial court denied the motion, and Ludwick’s claims
were tried to a jury.  

Houston testified at trial that he had no knowledge
of the 2001 fair market value of the condominiums, and that the conveyance to
HSI was not related to his representation of Badeaux.  Houston was impeached at
trial with deposition testimony in which he stated that (1) the fair market
value of the four units exceeded $174,000 in 2001; and (2) the conveyance was made
as payment for his representation of Badeaux in the probate matter.  Houston
denied at trial that these statements were accurate.  Houston did not ask the
trial court to instruct the jury that the evidence was to be considered only for
impeachment purposes, and not for the truth of the matter asserted.

Ad valorem tax assessments for 2001 also were admitted
into evidence; Ludwick relied on them as evidence of the condominiums’ fair
market value in 2001.  Additionally, the closing statement for the conveyance between
Badeaux and HSI was admitted; it listed the sale prices for the condominiums as
$35,000 for Unit 1105 and $14,000 for each of the three remaining units.  Houston
testified that he wrote a $12,467 check to Badeaux in payment for the condominiums,
and that he assumed the mortgage payments, the homeowners’ association fees,
and any property taxes due to creditors on the condominiums when they were
conveyed.  Copies of several checks remitting payment to the homeowners’
association were admitted into evidence.  

Houston testified that the tenants in Unit 1105
assumed the mortgage payments for that condominium, and that the tenants’
failure to make payments resulted in foreclosure.  Houston also testified that
Units 802 and 1202 were owned by Badeaux free of mortgages in 2001.  The trial
court admitted into evidence letters and court documents regarding a dispute
between the homeowners’ association and Houston about whether the homeowners’
association fees had been paid.  The trial court also admitted pleadings from
the original delinquent property tax litigation pertaining to Units 202 and
802.

After a two-day trial, the jury returned a verdict.  The
jury responded affirmatively to Question 1, which asked whether “at the time in
question . . . Madyline Badeaux was a client of Melvin Houston with respect to
the matter in dispute.”  The jury also answered “yes” to Question 2, which
asked whether Houston “fail[ed] to comply with his fiduciary duty to Madyline
Badeaux with regard to the transactions involving the Sussex Condos.”   Relative
to the unjust enrichment claim, the jury answered “yes” to Question 3, which asked
whether Houston and HSI “intended to avail themselves of a benefit that [they] knew
belonged to Madyline Badeaux.” The jury answered Question 4, which was
predicated on a “yes” answer to Question 2 or Question 3, and awarded damages
totaling $142,300 to “fairly and reasonably compensate Christine Badeaux
Ludwick for her damages . . . that were proximately caused” by Houston and HSI. 
This total was based on individual awards of $28,900 for Unit 202; $33,000 for
Unit 802; $33,100 for Unit 1202; and $47,300 for Unit 1105.  No question was
submitted to the jury on the discovery rule or any aspect of the statute of
limitations. 

Houston filed a motion for judgment notwithstanding
the verdict, asking the trial court to disregard all jury findings because: 

(1) Ludwick lacked standing to sue on behalf of the
estate; 

(2) the statute of limitations barred the breach of
fiduciary duty claim; 

(3) no
evidence supported the jury’s answer in Question 1 that Badeaux was a client of
Houston with the respect to the conveyance, since the conveyance was separate
from the probate matter; 

(4) no
evidence supported the jury’s answer to Question 2 that Houston failed to comply
with his fiduciary duty, or its answer to Question 3 that Houston and HSI were
unjustly enriched, because no competent evidence of fair market value of the condominiums
showed that the transaction was unfair; 

(5) no
competent evidence of the fair market value of the condominiums supported the
jury’s award of money damages in Question 4.  

Houston filed a motion for
new trial asserting factual insufficiency of the evidence; he also requested remittitur
of the damage award, and argued that the trial court erred in admitting
plaintiff’s trial exhibits 2 and 10–21 into evidence at trial.  

The trial court denied Houston’s motion for judgment
notwithstanding the verdict, and Houston’s motion for new trial and remittitur was
overruled by operation of law.  The trial court entered judgment on the jury’s
verdict, with the exception that it ordered rescission of the deeds conveying Units
202 and 802 rather than damages for those two units.[2]  This
appeal ensued.

ANALYSIS

I.         Preliminary
Issues

Houston complains that Ludwick lacks standing because
she has no justiciable interest in property belonging to Badeaux’s estate. 
Additionally, as a prerequisite to a suit by an heir on an estate’s behalf, Houston
claims that Ludwick failed to establish that the administration of Badeaux’s
estate was not pending or necessary.  Houston also argues that the four-year
statute of limitations bars Ludwick’s breach of fiduciary duty claim.  We
overrule these issues.  

A.        Standing 

Standing is a component of subject matter
jurisdiction.  Jansen v. Fitzpatrick, 14 S.W.3d 426, 431 (Tex.
App.—Houston [14th Dist.] 2000, no pet.) (citing Tex. Ass’n of Bus. v. Tex.
Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)).  Subject matter jurisdiction
is reviewed de novo.  Tex. Dept. of Parks & Wildlife v. Miranda,
133 S.W.3d 217, 226–27 (Tex. 2004).  Determining whether undisputed evidence
establishes a trial court’s jurisdiction is a question of law.  Id.  If
a party challenges the existence of jurisdictional facts, we consider relevant
evidence submitted by the parties when necessary to resolve the jurisdictional
issues, as the trial court is required to do.  Id.  

Houston argues that Ludwick lacks standing to sue in
connection with the condominium conveyance because she is neither Badeaux’s
personal representative nor a beneficiary entitled to receive estate property
under Badeaux’s will.  Generally, only personal representatives and heirs have
standing to sue for recovery of property on behalf of an estate.  See, e.g.,
Fort Motor Co. v. Cammack, 999 S.W.2d 1, 4 (Tex. App.—Houston [14th
Dist] 1998, pet. denied) (citing Shepherd v. Ledford, 962 S.W.2d 28, 31
(Tex. 1998)).  Personal representatives and heirs have a justiciable interest in
the estate property.  Id. at 5.  

If a beneficiary has an interest in estate property under
a probated will, then the beneficiary has standing as an heir to sue for
recovery of estate property.  See, e.g., Jansen, 14 S.W.3d at 431–32
(residuary beneficiaries under will who were presently entitled to take
property had standing to sue to set aside deed executed by decedent); Pike
v. Crosby, 472 S.W.2d 588, 590 (Tex. App.—Eastland 1971, no writ)
(requiring plaintiffs to show that they were beneficiaries under a probated
will to sue to cancel deeds executed by decedent).  Successors in interest to
such a beneficiary also have standing.  See Jansen, 14 S.W.3d at 433.

Houston correctly asserts that Ludwick is not Badeaux’s
personal representative; additionally, in her will, Badeaux devised her entire
estate to Peacock when she died in 2004.  However, Ludwick was adjudicated to
be Peacock’s sole heir after Peacock died in 2005.  Any recovery in the suit on
behalf of Badeaux’s estate would pass to Ludwick as Peacock’s sole heir.  Therefore,
Ludwick has standing and a justiciable interest in a suit seeking recovery for
property belonging to Badeaux’s estate.  See id. (residuary beneficiary’s
sons, who would take under unprobated will or intestate disposition of
residuary beneficiary’s estate, had sufficient property interest to establish
standing to recover property of decedent’s estate).[3]

Houston also argues that Ludwick was required to show
no administration of Badeaux’s estate was pending or necessary before she had authority
to sue.  “It is the general rule that during the period allowed for
administration, before heirs . . . may maintain a suit to recover property
which they claim has descended to them, they must show that no administration
is pending and none is necessary.”  White v. White, 142 Tex. 499, 179
S.W.2d 503, 506 (1994).  The administration period in Texas closes four years
after the testator’s death.  See Tex. Prob. Code Ann. § 74 (Vernon
2003).  Once an administration period closes, this requirement no longer
applies and heirs properly may bring suit on behalf of the estate without such
a showing.  See County of Dallas v. Sempe, 151 S.W.3d 291, 296 (Tex.
App.—Dallas 2004, pet. dism’d w.o.j.) (requirement inapplicable to heirs
bringing survival action after four-year period closed); cf. Van v. Webb,
147 Tex. 299, 215 S.W.2d 151, 154 (1948) (“‘[I]f, owing to the lapse of time,
the statute forbids the grant of administration upon [the] estate . . . [the
heirs] are in such sense the representatives of their ancestor, that a pending
action may be revived or an original suit brought against them.’”) (quoting McCampbell
v. Henderson, 50 Tex. 601, 611 (1879)).

Badeaux died on May 12, 2004.  Ludwick first asserted
her claim against Houston on May 9, 2008.  By the time Houston filed his motion
to dismiss on August 8, 2008, the administration period for Badeaux’s estate
had closed.  Therefore, even if this requirement applies here, the trial court properly
rejected Houston’s contention because the administration period for Badeaux’s
estate had closed.

We overrule Houston’s challenge to Ludwick’s standing
and Houston’s contention that Ludwick was required to establish that the administration
of Badeaux’s estate was not pending or necessary.[4]

B.        Statute of Limitations

Houston challenges on appeal the trial court’s denial
of his motion for summary judgment, in which he argued that the four-year
statute of limitations barred Ludwick’s breach of fiduciary duty claim.  When a
trial court’s denial of a motion for summary judgment is followed by a trial on
the merits, review of the trial court’s summary judgment denial is foreclosed. 
See, e.g., Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex.
1966); Tricon Tool & Supply, Inc. v. Thumann, 226 S.W.3d 494, 508–09
(Tex. App.—Houston [1st Dist.] 2006, pet. denied); United Parcel Serv., Inc.
v. Tasdemiroglu, 25 S.W.3d 914, 916 (Tex. App.—Houston [14th Dist.] 2000,
pet. denied).  Therefore, we do not address Houston’s argument that the trial
court erred by denying his motion for summary judgment.  We overrule Houston’s
issue regarding the statute of limitations.

II.        Sufficiency of
the Evidence

Houston’s next issues on appeal relate to the legal
and factual sufficiency of the evidence supporting the jury’s answers.  Houston
argues that insufficient evidence supports an affirmative answer to Question 1,
in which the jury was asked whether Badeaux “was a client of Melvin Houston
with respect to the matter in dispute.”  Houston contends there is no evidence establishing
that his representation of Badeaux was related to the “matter in dispute,” i.e.,
the conveyance.  Houston also claims that the jury’s answers to Questions 2 and
3 are unsupported because no competent evidence of fair market value was
introduced to show that the sale price was unfair, or that Houston and HSI were
unjustly enriched.  Further, Houston claims that the lack of competent evidence
of fair market value at trial renders the jury’s finding of damages in Question
4 insupportable.  

When both the legal and factual sufficiency of the
evidence are challenged, we first review legal sufficiency to determine whether
there is any evidence of probative value to support the fact finders’ decision. 
Wiese v. Pro Am. Servs., Inc., No. 14-08-00989-CV, 2010 WL 2813313, at *2
(Tex. App.—Houston [14th Dist.] July 20, 2010, no pet.).  We sustain legal
insufficiency challenges when the evidence offered to prove a vital fact is no
more than a mere scintilla.  Busch v. Hudson & Keyse, LLC, 312
S.W.3d 294, 299 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing City
of Keller v. Wilson, 168 S.W.3d 802, 810 (Tex. 2005)).  We must consider
evidence in the light most favorable to the findings and indulge every
reasonable inference that would support them.  Id.  The ultimate test
for legal sufficiency focuses on whether the evidence would enable a reasonable
and fair-minded fact finder to reach the judgment under review.  Id.  In
our factual sufficiency review, we consider all the evidence and will set aside
the finding only if the evidence supporting the finding is so weak or so
against the overwhelming weight of the evidence that the finding is clearly
wrong and unjust.  Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 752–53
(Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing Cain v. Bain, 709
S.W.2d 175, 176 (Tex. 1986)). 

A.        Relation Between the Conveyance and Houston’s
Representation of Badeaux

A fiduciary relationship exists between an attorney
and a client as a matter of law.  Goffney v. Rabson, 56 S.W.3d 186, 193
(Tex. App.—Houston [14th Dist.] 2001, pet. denied).  The term fiduciary refers
to integrity and fidelity.  Id.  Therefore, the attorney-client
relationship is one of most abundant good faith, and it requires absolute
candor, openness, honesty, and the absence of any concealment or deception.  Id. 
Breach of fiduciary duty by an attorney most often involves an attorney failing
to disclose conflicts of interest; failing to deliver funds belonging to the
client; placing personal interests over the client’s interests; using client
confidences improperly; taking advantage of the client’s trust; engaging in
self-dealing; or making misrepresentations.  Id.  A breach of fiduciary
duty claim against an attorney focuses on whether the lawyer obtained an
improper benefit from representing the client.  Murphy v. Gruber, 241
S.W.3d 689, 693 (Tex. App.—Dallas 2007, pet. denied).

The parties agree that Houston represented Badeaux
from early 2001 until April 2002.  The parties also agree that Badeaux conveyed
the four condominiums to HSI, which was owned solely by Houston, during the
representation.  Houston contends there is no evidence that the conveyance related
to his representation of Badeaux.  From this premise, he argues that the
conveyance was not encompassed by his fiduciary duties as Badeaux’s attorney.

Houston’s contention fails even if we assume solely for
the sake of argument that a fiduciary duty would not apply to a transaction between
Badeaux and Houston occurring during the representation if that transaction
were not related to the representation.  The jury heard evidence that the
conveyance was related to the representation because it was made in exchange
for Houston’s legal services rendered in the probate matter.  Houston denied at
trial that such an arrangement existed; however, he was impeached with
deposition testimony in which he stated that Badeaux conveyed the condominiums as
payment for his legal services.  Houston’s deposition testimony provided
evidence that he considered the closing statement for the conveyance to embody his
agreement with Badeaux.  Houston did not ask the trial court to instruct the
jury that the deposition testimony was to be considered for impeachment
purposes only, and not for the truth of the matter asserted.  Therefore, the
jury was entitled to rely on this testimony in answering Question 1.  See
Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 906 (Tex. 2000) (court
of appeals properly upheld admissibility of evidence for any purpose where
party failed to request limiting instruction at trial); Gabriel v. Lovewell,
164 S.W.3d 835, 845 (Tex. App.—Texarkana 2005, no pet.) (in absence of limiting
instruction, impeachment testimony admissible for all purposes).  

Viewed in the light most favorable to the jury’s
answer to Question 1, this testimony constitutes more than a scintilla of
evidence establishing that the condominiums were conveyed as payment for Houston’s
legal services in the probate matter, and that Badeaux was Houston’s client
with respect to the “matter in dispute” involving the condominiums.  This
evidence is not so weak as to render the jury verdict unfair or unjust. 

We overrule Houston’s evidentiary sufficiency
complaints as to the jury’s answer to Question 1.

B.        Fairness of the Transaction

Houston next challenges the legal and factual sufficiency
of the evidence supporting the jury’s finding in answer to Question 2 that he
failed to comply with his fiduciary duty to Badeaux.  In particular, Houston
complains that the ad valorem tax assessment documents were not competent
evidence of the condominiums’ fair market value, and that these documents could
not be used to show that the purchase price was unfair.  

When self-dealing by the fiduciary is alleged as part
of a breach of fiduciary duty claim, a presumption of unfairness automatically
arises and the burden is placed on the fiduciary to prove that the questioned
transaction was (1) made in good faith; (2) for a fair consideration; and (3)
after full and complete disclosure of all material information to the
principal.  Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 22 (Tex.
App.—Tyler 2000, pet. denied) (citing Stephens County Museum, Inc. v.
Swenson, 517 S.W.2d 257, 261 (Tex. 1974), and Int’l Bankers Life Ins.
Co. v. Holloway, 368 S.W.2d 567, 576 (Tex. 1963)).  The instruction accompanying
Question 2 properly placed this burden on Houston:

Because a relationship of trust and confidence existed
between [Houston and Badeaux] with regard to the transaction involving the
Sussex Condos, [Houston] owed Madyline Badeaux a fiduciary duty.  To prove that
he complied with his duty, Melvin Houston must show:

a.      The
transaction in question was fair and equitable to Madyline Badeaux;

b.      Melvin
Houston made reasonable use of the confidence that Madyline Badeaux placed in
him;

c.      Melvin
Houston acted in the utmost good faith and exercised the most scrupulous
honesty toward Madyline Badeaux; 

d.      Melvin
Houston placed the interest of Madyline Badeaux before his own, did not use the
advantage of his position to gain any benefit to himself at the expense of
Madyline Badeaux, and did not place himself in any position where his
self-interest might conflict with his obligation as a fiduciary, and

e.      Melvin
Houston fully and fairly disclosed all important information to Madyline
Badeaux concerning the transaction.

Because Houston bore the burden of rebutting the
presumption that the conveyance was unfair, to succeed on a legal sufficiency challenge
he must demonstrate that the evidence conclusively establishes the fairness of
the challenged conveyance.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237,
241 (Tex. 2001).  To succeed on a factual sufficiency challenge, he must show
that the jury’s finding was against the great weight and preponderance of the
evidence.  Id.  

Houston testified at trial that Badeaux did not pay
Houston’s $20,157.33 bill for the probate representation.  In his deposition,
Houston testified that the condominiums were conveyed in exchange for services
he provided as part of the probate representation.  Houston testified at trial that
the condominium conveyance was fair and undertaken in good faith.  Houston also
testified that he did not advise Badeaux to list the condominiums for sale;
advertise the condominiums for sale within Sussex; or seek a second mortgage on
the condominiums if she needed money to pay her legal bill.  Houston testified
that Badeaux was unrepresented by any other attorney at the closing.

Houston also testified at trial that he had no
knowledge of the condominiums’ market value.  He was impeached with deposition
testimony in which he testified that in 2001, Unit 1105 was worth more than
$75,000; Unit 202 was worth more than $33,000; and Units 802 and 1202 have
floor plans similar to Unit 202.  Houston did not ask the trial court to
instruct the jury that the evidence was to be considered for impeachment
purposes only, and not for the truth of the matter asserted.  Therefore, the
jury could consider this evidence in answering Question 2.  See Horizon/CMS
Healthcare Corp., 34 S.W.3d at 906; Gabriel, 164 S.W.3d at 845.

The closing statement indicates a purchase price of
$77,000, less credits for payment of $64,532.88 to third parties for
outstanding mortgage liens, homeowners’ association fees, and taxes, resulting
in a net payment of $12,467.12 to Badeaux.  The jury heard evidence that the
homeowners’ association disputed whether the fees had been paid, and that one
of the condominiums went into foreclosure following non-payment of the
mortgage.  Further, the jury heard evidence that the current litigation arose
from Harris County’s delinquent tax suit for non-payment of taxes for two of
the condominiums dating back to 2001.  

Based on this evidence, the jury was entitled to
conclude that Houston failed to comply with his fiduciary duty because the fair
market value of the four condominium units far exceeded the purchase price
specified for the March 2001 conveyance.  Houston’s evidence does not
conclusively establish that the conveyance was fair as a matter of law.  Additionally,
Houston’s testimony does not show that the verdict was against the great weight
or preponderance of the evidence.

We overrule
Houston’s sufficiency complaints as to the jury’s answer to Question 2.[5]
C.        Damages

Houston argues that no evidence supports the jury’s damage
awards in Question 4.  He contends that there is no evidence of fair market
value to compare to the purchase price for purposes of establishing damages.  He
claims that tax assessments were the only evidence introduced to show the fair
market value of the condominiums.    

The tax assessment value placed upon real property is
not evidence of its value for purposes other than taxation.  Houston
Lighting & Power Co. v. Fisher, 559 S.W.2d 682, 686–87 (Tex.
App.—Houston [14th Dist.] 1977, writ ref’d n.r.e.) (valuation of property in
condemnation case).  Here, the assessments were not the only evidence of the condominiums’
value introduced at trial.  As discussed above, Houston testified in his
deposition that the four condominiums were worth more than $174,000 in 2001.  Viewed
in the light most favorable to the jury’s damage award, Houston’s deposition
testimony constitutes more than a scintilla of evidence regarding the fair
market value of the condominiums.  See Porras v. Craig, 675 S.W.2d 503,
504–05 (Tex. 1984) (testimony of an owner as to property’s fair market value is
competent evidence).[6] 
Because this evidence showed that the fair market value far exceeded the
purchase price for the condominiums reflected in the closing statement, the
record supports the jury’s conclusion that the conveyance caused damage to
Badeaux.  

As to the amount of damages, the evidence showed that
Badeaux’s potential damages ranged from $96,589.52 to $174,000.[7]  The jury
awarded a total of $142,300 allocated among the four units.  Because the jury’s
finding falls within the range of damage awards supported by the evidence, the
award is an appropriate exercise of the jury’s discretion.  See Waterways on
Intercoastal Ltd. v. State, 283 S.W.3d 36, 46 (Tex. App.—Houston [14th
Dist.] 2009, no pet.).

We overrule Houston’s issue regarding the sufficiency
of the evidence supporting the jury’s answers to Question 4.

III.      Remittitur

Houston requested remittitur of the damage awards
assessed by the jury, based on his assertion that the evidence conclusively
demonstrated payment of (1) $12,467.12 by check to Badeaux; (2) $60,381.26 in
mortgage debt; (3) $1,410.48 in homeowners’ association fees; and (4) $3,151.62
in property taxes on the condominiums.  The trial court denied his request and signed
a final judgment ordering rescission of the deeds for Units 202 and 802, and
payment of damages of $33,100 and $47,300 for Units 1202 and 1105,
respectively.  

The standard of review for an excessive damages complaint
is based on the factual sufficiency of the evidence.  See Rose v. Doctors
Hosp., 801 S.W.2d 841, 847–48 (Tex. 1990).  As stated above, we consider
all of the evidence and will set aside the finding only if the evidence
supporting the finding is so weak or so against the overwhelming weight of the
evidence that the finding is clearly wrong and unjust.  Dow Chem. Co.,
46 S.W.3d at 242.  Because the courts of appeals do not find facts, we must not
pass upon the witnesses’ credibility or substitute our judgment for that of the
jury, even if the evidence would clearly support a different result.  See,
e.g., Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986).

The closing statement for the conveyance states that the
purchase price was $14,000 for Unit 1202 and $35,000 for Unit 1105, and that
HSI assumed the mortgages, taxes, and homeowners’ association fees due to
creditors on the condominiums.[8] 
Other than copies of several checks for homeowners’ association fees, Houston’s
trial testimony was the only evidence at trial that payment was actually made. 
Additionally, Houston testified that Unit 1202 was not subject to a mortgage
when Badeaux conveyed it.  He testified that Unit 1105 was foreclosed upon when
the tenant, who had assumed the mortgage, failed to stay current with the
payments.  Several letters were introduced in which Houston corresponded with
Sussex Condominiums regarding a dispute about whether the homeowners’
association fees were paid after the conveyance.  The closing statement does
not state that any taxes were owed on Units 1202 or 1105.  Considering all this
evidence, we cannot say that the damage award was excessive or that a
remittitur was warranted.

We overrule Houston’s issue regarding the requested
remittitur of the jury’s damage award.

IV.      Evidentiary
Challenges

Houston complains that the trial court erred in
admitting Ludwick’s exhibits 2 and 10–21.  He argues the trial court erred in
admitting these exhibits because (1) the exhibits were not produced during
discovery, (2) the exhibits are irrelevant, and (3) the prejudice from these
exhibits outweighed their probative value under Texas Rule of Evidence 403.

A.        Preservation

The record reveals that the admissibility of exhibits
2, 10–14, and 16 was argued at a hearing that began before voir dire and
resumed after jury selection.  Houston generally informed the trial court that
he intended to object to exhibits 17 and 19, but he failed to object when those
exhibits were introduced at trial.  Houston stated that he had no objections to
exhibit 15.  It does not appear from the record that exhibits 18, 20, or 21
were admitted into evidence at trial.  

To preserve error on the admission of evidence, a
timely objection must appear on the record stating the specific ground of
objection.  See Tex. R. Evid. 103.  Ludwick argues that because Houston
raised some of his objections in connection with his motion in limine, his
evidentiary complaints were not preserved for appellate review.  

A motion in limine is a pretrial device that permits
a party to identify certain evidentiary rulings the trial court may be asked to
make.  Greenberg Traurig of N.Y., P.C. v. Moody, 161 S.W.3d 56, 90 (Tex.
App.—Houston [14th Dist.] 2004, no pet.); Weidner v. Sanchez, 14 S.W.3d
353, 363 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  A motion in limine
prevents the opposing party from asking prejudicial questions or introducing
prejudicial evidence in front of the jury without first seeking the trial
court’s permission.  Hartford Acc. & Indem. Co. v. McCardell, 369
S.W.2d 331, 335 (Tex. 1963), rev’d on other grounds, Bay Area
Healthcare Group, Ltd. v. McShane, 239 S.W.3d 231 (Tex. 2007); Weidner,
14 S.W.3d at 363.  Because a trial court’s ruling on a motion in limine
preserves nothing for review, a party still must object when the evidence is
offered to preserve error.  Hartford, 369 S.W.2d at 335.

Not all pretrial motions are motions in limine.  Greenberg
Traurig, 161 S.W.3d at 91.  There is a distinction between a motion in
limine and a pretrial ruling on admissibility.  Id.  The trial court has
the authority to make a pretrial ruling on the admissibility of evidence.  Id.
(citing Huckaby v. A.G. Perry Son, Inc., 20 S.W.3d 194, 203 (Tex.
App.—Texarkana 2000, pet. denied)).  Even when a motion in limine has been overruled,
a judgment will not be reversed based on an evidentiary complaint unless the
evidence was in fact offered for admission at trial; if it was in fact offered
for admission at trial, then an objection made at that time will preserve the
right to complain on appeal.  Hartford, 369 S.W.3d at 335; Tex. R. Evid.
103 (“When the court hears objections to offered evidence outside the presence
of the jury and rules that such evidence be admitted, such objections shall be
deemed to apply to such evidence when it is admitted before the jury without
the necessity of repeating those objections.”); see also Greenberg Traurig,
161 S.W.3d at 91–93.  

The issues raised in connection with Houston’s motion
in limine were heard on the record and reargued when Ludwick actually offered
exhibits 1–24 for admission into evidence. This occurred after jury selection
but before opening statements.  Ludwick offered the exhibits, and the trial
judge asked for objections.  At that point the hearing became a hearing on the
admissibility of the exhibits, and Houston’s objections to the exhibits were
preserved.  The trial court made a definitive ruling at that time to admit
exhibits 2, 10–14, and 16 into evidence for the jury’s consideration. 
Therefore, we reject the contention that Houston’s complaints regarding
exhibits 2, 10–14, and 16 are unreviewable because they were raised only in a
motion in limine.  

Because Houston failed to make specific objections to
exhibits 17 and 19, and because he informed the trial court that he had no
objections to exhibit 15, the admissibility of those exhibits is not reviewable
on appeal.  We do not address the admissibility of exhibits 18, 20, and 21,
which were not admitted into evidence at trial.

B.        Exhibits 2, 10–14, and 16

Houston claims that the trial court erred in
admitting the challenged exhibits because (1) Ludwick did not produce the documents
during discovery, (2) the documents are irrelevant, and (3) the prejudice from
the documents outweighs their probative value.  Exhibit 2 shows the 2001 Harris
County tax assessments for the condominiums in question.  Exhibits 10–14 and 16
are correspondence between Houston and Sussex Condominiums regarding the homeowners’
association fee dispute.  All of these letters are dated after Badeaux’s death;
in them, Houston purports to speak on Badeaux’s behalf to challenge Sussex’s
accounting of the fee payments.  

The first ground provides no basis for reversal.  Discovery
sanctions, such as the exclusion of evidence not timely produced during discovery,
are reviewed for abuse of discretion.  See Tex. R. Civ. P. 193.6; Duerr
v. Brown, 262 S.W.3d 63, 69, 76 (Tex. App.—Houston [14th Dist.] 2008, no
pet.).  The trial court may prohibit a party who fails to make, amend, or
supplement a discovery response in a timely manner from introducing new
evidence if the failure unfairly surprises or prejudices the other party.  See
Tex. R. Civ. P. 193.6(a)(2).  

When Houston complained that Ludwick did not produce these
exhibits during discovery, Ludwick informed the trial court that the
introduction of the documents should not surprise Houston because (1) the tax
assessment information was produced during discovery, albeit in different
format, and (2) Houston received copies of his own correspondence with Sussex
Condominiums months before trial.  The trial court acted within its discretion
to decide that under these circumstances, the introduction of the evidence did
not unfairly surprise Houston.

The second and third grounds also provide no basis
for reversal.  Houston claims that the exhibits are irrelevant.  Evidentiary
rulings are committed to the trial court’s sound discretion.  Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998); Halim v.
Ramchandani, 203 S.W.3d 482, 488 (Tex. App.—Houston [14th Dist.] 2006, no
pet.) (“We must uphold the trial court’s evidentiary ruling if there is any
legitimate basis for it.”).  At the pretrial hearing, Houston’s only objection
to the relevancy of exhibit 2 was based on his initial misunderstanding as to the
date on the tax assessments; he thought they related to 2008 instead of 2001. 
Because no other relevancy argument was raised, we hold that the trial court acted
within its discretion to admit exhibit 2.  Houston also challenges the
relevancy of the correspondence regarding the disputed payment of homeowners’
association fees.  Because these documents are probative of whether the fees
referenced in the closing statement were paid, the trial court acted within its
discretion in concluding that exhibits 10–14 and 16 are relevant.

Houston also argues that the trial court abused its
discretion in deciding that the documents’ prejudicial impact does not outweigh
their probative value.  See Tex. R. Evid. 403.  Specific objections to
evidence are required to enable the trial court to understand the precise
question of law raised by the objecting party and to make an intelligent
ruling.  See Tex. R. Evid. 103(a)(1); Seymour v. Gillespie, 608
S.W.2d 897, 898 (Tex. 1980).  Houston’s challenge to the prejudicial impact of
exhibit 2 related only to his complaint that it was not produced during
discovery, which we already have addressed.  When Houston objected to the
admission of exhibits 10–14 and 16, he stated: “I object on the . . . grounds
[that the documents are] prejudicial under 4.03 [sic]. . . .  [T]hese documents
are unfairly prejudicial under 4.03 [sic] . . . .”  Houston did not explain on
the record why these documents were so prejudicial as to outweigh their
probative value on the question of damages.  Therefore, Houston’s general
objection was insufficient, and the trial court acted within its discretion in overruling
his objection.  

CONCLUSION

Having overruled all of Houston’s issues on appeal,
we affirm the trial court’s judgment of March 30, 2009.

                                                /s/                    William
J. Boyce

                                                                        Justice

 

 

Panel
consists of Justices Seymore, Boyce, and Christopher.








 









[1]
This appeal was brought on behalf of both Houston and HSI.  The arguments
asserted in the appellants’ brief are made on behalf of both Houston and HSI. 
HSI does not make any arguments that differ from those made by Houston.  Unless
otherwise noted, our resolution of arguments made by Houston is equally
applicable to HSI.





[2]
The judgment comported with the jury findings that Houston breached a fiduciary
duty owed to Badeaux in connection with the conveyance of the four condominium
units to HSI, and that Houston and HSI both were unjustly enriched.  Houston
and HSI are jointly and severally liable for the damage award in the final
judgment.  HSI does not challenge on appeal the propriety of joint and several
liability for damages in connection with Houston’s breach of fiduciary duty to
his client Badeaux.  The portion of the judgment awarding rescission is solely
against HSI, the property owner listed in the deeds for Units 202 and 802. 
Houston and HSI make one statement in their brief regarding the rescission:
“The trial court also abused its discretion in the Final Judgment by ordering a
rescission of the deeds for Units 202 and 802.”  This statement, found in a
footnote in Houston and HSI’s brief, is insufficient to warrant further review
of the propriety of rescission as a remedy for the breach of fiduciary duty
established in answer to Question 2.  See Tex. R. App. P. 38.1(i). 





[3]
Badeaux’s will states that if Peacock does not survive Badeaux, then her estate
passes to Ludwick.  We need not decide whether this provision alone would
confer standing on Ludwick because Peacock survived Badeaux at the time of her
death in 2004, and Ludwick later was adjudicated to be Peacock’s sole heir
after his death in 2005. 





[4]
Houston also argues that his statute of limitations argument may be applied to
attack Ludwick’s standing to sue.  However, a statute of limitations challenge
is not properly framed as a challenge to standing.





[5]
Question 4 was predicated on a “yes” answer to either Question 2 or Question
3.  Because we affirm the jury finding on Question 2, we do not address whether
the evidence was sufficient to support the unjust enrichment claim submitted in
Question 3.  See Hatfield v. Solomon, 316 S.W.3d 50, 59–60 (Tex.
App.—Houston [14th Dist.] 2010, no pet.) (unnecessary to reach additional
issues because judgment was supported by one of multiple causes of action
leading to same damage award).





[6]
The property deeds and closing statement are in HSI’s name.  Houston is HSI’s
sole owner.  During trial, Houston repeatedly referred to the condominiums as
his own.  On this record, we treat Houston’s testimony regarding the fair
market value of the condominiums as the testimony of the condominiums’ owner.  





[7]
If the jury believed that the full $77,000 was paid for the condominiums, it
could have assessed damages of $96,589.52 as the difference between the $77,000
purchase price and the $174,000 fair market value.  If the jury believed that
no payment was rendered for the condominiums, it could have assessed up to
$174,000 in damages.





[8]
Because the trial court disregarded the damages award for Units 202 and 802,
and instead ordered rescission as to these units, we address remittitur only as
it pertains to Units 1202 and 1105.